[L. A. No. 4909. Department One.—June 19, 1920.]

## S. M. MUNSON, Appellant, v. J. E. FISHBURN et al., Respondents.

[1] CORPORATIONS—ASSOCIATION IN COMMON ENTERPRISE—DUTY OF ASSOCIATES TO EACH OTHER.—Associates in a common enterprise, under whatever guise, have a duty to each other to make full disclosure of any preference or profit not common to all the associates.

----

1. Mutual rights and liabilities of joint adventurers, notes, 17 Ann. Cas. 1022; Ann. Cas. 1912C, 202; Ann. Cas. 1914C, 691; Ann. Cas. 1916A, 1210.

[2] ID.—OPTION HOLDER—RETENTION OF PROFITS.—An option holder or promoter will not be allowed to retain profits realized from the exercise of the option unless the fact of his interest in the option is disclosed in advance.

[3] ID.—OPTION OWNERS AND JOINT PROMOTERS—INTEREST IN ENTERPRISE—DUTY TO SUBSCRIBERS.—Option owners who are also joint promoters are equally bound to make known to prospective subscribers the nature and extent of their interest in the enterprise.

[4] ID.—INSUFFICIENT DISCLOSURE OF PROFITS—RIGHT OF SUBSCRIBER. The right of a subscriber of stock to rescind or recover damages for false representations of option holders and joint promoters that they had no interest in the options, but were subscribers on the same basis as himself, is not affected by the fact that such holders and promoters disclosed the amount of the profits without disclosing their ownership.

[5] ID.—RIGHT OF RESCISSION—PLACING OF PARTIES IN STATU QUO.— Where stock was issued to a subscriber directly from the corporation, but at the instance of the persons who procured the subscription and in compliance with their agreement to sell to the subscriber one share of stock for every dollar subscribed and paid upon the subscription agreement, which was procured by fraud, the contention that it was impossible to put such persons *in statu quo,* and therefore the subscriber could not have rescission, is without merit where the subscriber offered to return to such persons the stock received by him.

[6] ID.—RIGHT OF RESCISSION—DELAY AFTER DISCOVERY OF FRAUD— ABSENCE OF LACHES.—Where a subscriber for corporation stock did not learn that he had a right to rescind on account of fraud until four months previous to the bringing of an action for rescission, and then promptly offered to rescind, his delay in consulting an attorney cannot be said to be so unreasonable as to amount to laches.

[7] ID.—PAYMENT OF ASSESSMENTS AFTER DISCOVERY OF FRAUD—SUBSCRIPTION NOT AFFIRMED.—Payment of assessments by a stock subscriber after the discovery of the fraud inducing the subscription does not constitute an affirmance of the transaction which bars his cause of action for rescission, since he has the right to preserve the stock so that he may be in a position to make an offer to return it.

[8] ID.—DAMAGES FOR RESCISSION—PLEADING—SUFFICIENCY OF COMPLAINT.—In an action for rescission of a stock subscription contract, an allegation that at the time the plaintiff paid the money the interest which he thereby acquired had a fictitious market value, which value was created by reason of the belief that the persons who had induced the purchase had subscribed on the same basis as the other subscribers, and that it subsequently

became known that they had not so subscribed, and were joint owners with others of options to be purchased by the corporation, and that by reason of such knowledge plaintiff's stock had never been of a greater value than three-fifths of said fictitious value, is a sufficient allegation of damages.

[9] RESCISSION—DAMAGES—PLEADING.—In an action for rescission, the exact amount of damage need not be shown, provided it be in an appreciable sum:

[10] FRAUD—DAMAGES—PLEADING.—Where the action is for damages for fraud, the plaintiff must allege and prove that he has suffered damage in a definite amount.

[11] CORPORATIONS—FRAUD—PURCHASE OF STOCK—MEASURE OF DAMAGES.—In an action of rescission for false representations inducing a purchase of corporate stock, the measure of damages is the amount paid, including assessments, with interest thereon at the rate of seven per cent from the dates of payments less the value of the stock at the time of the discovery of the fraud.

[12] ID.—RELIANCE UPON REPRESENTATIONS—CHANGE OF POSITION—DAMAGE—RESCISSION.—In an action for rescission of a stock subscription contract induced by fraud, while the value of the defendants' connection with the corporation may not be capable of ascertainment, nevertheless if the plaintiff was induced by the defendants' false representations to change his position in reliance thereon, the lessened value of the stock would constitute damage for the purpose of rescission.

[13] ID.—RIGHT OF RESCISSION AGAINST PROMOTERS.—The fact that option holders and promoters of a corporation who by false representations induced a person to purchase stock were not vested with any discretion in purchasing property for the corporation, and never owned the stock which they induced the subscriber to purchase, does not prevent rescission against them as distinguished from rescission against the corporation, where the stock was taken upon their false representations that they had purchased stock on the same basis, and they failed to disclose their interest with others in certain options which the corporation was to purchase.

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred H. Taft, Judge. Reversed.

The facts are stated in the opinion of the court.

James S. Bennett for Appellant.

O'Melveny, Stevens & Millikin, John E. Biby, Walter K. Tuller, Edwin A. Meserve, Shirley E. Meserve and Gibson, Dunn & Crutcher for Respondents.

LAWLOR, J.—This is an appeal from a judgment on demurrer entered in favor of the defendants and against the plaintiff. The action was brought by the plaintiff for the rescission of a contract by which he subscribed to a syndicate to be formed by the defendants to acquire certain land, or for damages if rescission should be found to be inequitable.

It is alleged in the complaint that the defendants, J. E. Fishburn, president of the National Bank of California; R. I. Rogers, vice-president of said bank; R. A. Rowan & Company, a corporation, and W. H. Joyce, were the owners of options to buy a certain tract of two thousand eight hundred acres of land in Los Angeles County; that a syndicate was formed for the purchase of said land; that for the purpose of inducing the plaintiff to subscribe for shares in the syndicate and thereby become a copurchaser of the land with the defendants and other subscribers, "defendants and each of them represented to plaintiff that the defendants R. A. Rowan & Company and W. H. Joyce were the owners of the options to purchase the land"; that the price to the subscribers to the syndicate was $850 per acre, payable as follows: Nine hundred and twenty thousand dollars in cash on December 9, 1912, and the balance in two installments of equal amount in five and ten years, respectively, from the date of the exercise of the said options; that the said price was about $87.50 per acre in excess of the price to the said option owners, who were to receive and retain the difference for their options and services; that Fishburn and Rogers had subscribed to said syndicate and would pay on an equal basis with the other subscribers the sum of twenty-five thousand dollars, respectively, into the said subscription fund of nine hundred and twenty thousand dollars. "That, relying upon said representations that . . . Fishburn and Rogers had each subscribed the sum of twenty-five thousand dollars to said syndicate agreement on an equal basis with plaintiff and would pay in the amount of their said subscriptions, . . . plaintiff on or about the tenth day of November, 1912, signed said syndicate agreement and subscribed thereto the sum of five thousand dollars," and thereafter paid said sum to defendants Rowan & Company and Joyce. "That had it been disclosed to plaintiff that . . . Fishburn and

Rogers . . . had an interest in said options or in said profits, plaintiff would not have subscribed to said syndicate agreement or paid in the amount of his said subscription or any part thereof, or at all become a party to said syndicate agreement.'' That these representations were false in this: ''That it was understood and agreed by and between defendants . . . that the amounts of said subscriptions . . . made by . . . Rogers and Fishburn, respectively, when paid in by them should be returned to them, respectively, as their shares of the profit of eighty-seven and fifty one-hundredths dollars per acre mentioned in said syndicate agreement as being received and retained by . . . R. A. Rowan & Company and Joyce''; that Fishburn and Rogers were the owners of a one-tenth interest, respectively, in the options represented to the plaintiff as being owned exclusively by the disclosed option owners, Rowan & Company and Joyce. That at the time plaintiff signed the syndicate agreement the names of Fishburn and Rogers appeared as subscribers thereto with their subscriptions in the sum of twenty-five thousand dollars each, and that they concealed from and failed to disclose to plaintiff that there was an agreement between them to the effect that the subscriptions of the undisclosed option owners should be returned to them as their share of said profits.

It is further alleged that on December 3, 1912, the amount of the subscription fund having been paid in ahead of time, the purchase of the land was made and a corporation, known as the ''Laguna Land and Water Company,'' organized; that this corporation was capitalized at two million dollars and stock was issued and divided into two million shares of the par value of one dollar each; that nine hundred and twenty thousand shares of this stock were issued to the option owners, Rowan & Company and Joyce, in consideration of the transfer of the land to the corporation; that these nine hundred and twenty thousand shares were distributed to the subscribers to the syndicate at the rate of one share for each dollar subscribed; that on the same day twenty-five thousand shares were issued to each of the defendants Fishburn and Rogers, although they did not pay their subscriptions until January 24, 1913; that on the last-mentioned date they made a pretended payment to Rowan & Company and Joyce of the

amount of their subscriptions, and that at the same time, and pursuant to the agreement that the amount of their subscriptions, when paid, should be returned to them as their share of the profits, they received back from Rowan & Company and Joyce the identical amount paid in by them.

The complaint then alleges that the plaintiff first discovered the fraud on June 1, 1915, but was not aware, until some time in November, 1915, of his right to rescind. On November 29, 1915, plaintiff notified the defendants that he rescinded the agreement, tendered back the stock which had been issued to him, demanded his money, and, being refused, brought this suit.

The demurrer was to the second amended complaint as amended, on the following general grounds:

"1. That the same does not state facts sufficient to constitute a cause of action.

"2. That the same is uncertain in the following respects, and each of them:

"a. It cannot be ascertained how the payment of twenty-five thousand dollars made by J. E. Fishburn was a pretended or fictitious payment.

"b. It cannot be ascertained how the payment of twenty-five thousand dollars made by R. I. Rogers was a pretended or fictitious payment."

The demurrer was sustained without leave to amend, and judgment was entered in favor of the defendants with costs.

[1] 1. It is well settled that associates in a common enterprise, under whatever guise, have a duty to each other to make full disclosure of any preference or profit not common to all of the associates. In *Lomita Land & Water Co.* v. *Robinson*, 154 Cal. 36, [18 L. R. A. (N. S.) 1106, 97 Pac. 10], the defendant had secured an option on a certain tract of land for the sum of twenty-seven thousand five hundred dollars. He told one Whitlock that if he would find him a purchaser who would pay thirty-three thousand dollars for the property he (defendant) would pay Whitlock three thousand dollars. Whitlock organized a corporation to make the purchase and himself subscribed to the fund being raised to make the payment, but he did not disclose to his associates or cosubscribers that he was

to get a profit. The court said: "When he did this he assumed as to his associates, under a well-established rule of law, a relation analogous to that which exists between partners, and was precluded from making any secret profit out of the contemplated purchase at their expense. *The implied understanding between joint purchasers is that each is engaging in an enterprise solely for the mutual and common benefit and advantage of all, and that each has a common interest with the others according to the amount of his subscription.*" (Italics ours.)

The principle of that case was followed in *California-Calaveras Min. Co.* v. *Walls,* 170' Cal. 285, 293, [149 Pac. 595, 599], which quotes from the syllabus of the former case, as follows: "Promoters of a corporation formed 'for the express purpose of purchasing a particular piece of property occupy a fiduciary relation to their cosubscribers, and are bound truthfully to declare to their associates any personal interest they may have in the matter of the purchase. Without such disclosure they cannot legally profit at the expense of their associates, and if they were guilty of any misrepresentation of facts or suppression of truth in relation to their personal interest in the proposed purchase, the corporation is entitled to set aside the transaction, or recover compensation for any loss which it has suffered." (See, also, *Western States Life Ins. Co.* v. *Lockwood,* 166 Cal. 185, [135 Pac. 496]; *Smith* v. *Goethe,* 147 Cal. 725, [82 Pac. 384]; *Pacific Vinegar etc. Works* v. *Smith,* 145 Cal. 352, 361, [104 Am. St. Rep. 42, 78 Pac. 550]; *Sims* v. *Petaluma Gas-Light Co.,* 131 Cal. 656, [63 Pac. 1011]; *San Pedro Lumber Co.* v. *Reynolds,* 121 Cal. 74, [53 Pac. 410].)

While it is true that in some of the cases just cited—for example, the Calaveras case—it was not disclosed by the promoters that anyone connected with the organization of the enterprise was to get a profit, and in the instant case it was made known to the subscribers that Rowan & Co. and Joyce were to receive the profits, nevertheless the same principle applies. Fishburn and Rogers held themselves out to the public as subscribers who had enough faith in the venture to risk twenty-five thousand dollars on it, and, because of this and the position they occupied in the financial world, plaintiff was induced to subscribe to the

syndicate—which he alleges he would not have done had he known that they were interested in the options to an extent equal to the amount of their subscriptions. The law imposed upon these defendants the same duty to disclose their interest in the options as it imposed upon Rowan & Company and Joyce. [2] There could be no question of plaintiff's right of action if there had been no disclosures as to the profits, for it is well settled that an option holder or promoter will not be allowed to retain profits—realized from the exercise of the option—unless the fact of his interest in the option is disclosed in advance. [3] We think that Fishburn and Rogers, in addition to being option owners, were joint promoters with Rowan & Company and Joyce, and hence were equally bound to make known to prospective subscribers the nature and extent of their interest in the enterprise. If we understand defendants' position it is this: That since the amount of the profits to accrue was fully disclosed to the plaintiff, he will not be heard to complain that he was not informed as to whom the profits would go. [4] But this position ignores the claim of the plaintiff that he is entitled to rescission or damages because of the false representations that Fishburn and Rogers had no interest in the options, but were subscribers on the same basis as himself, and that he was induced by these false representations to subscribe, which he would not otherwise have done.

In *Talmage* v. *Sanitary Security Co.*, 31 App. Div. 498, [52 N. Y. Supp. 139], where three actions were brought to rescind subscriptions to the capital stock of the defendant company and recover the installments paid thereon on the ground that certain men of standing in the community had held themselves out as subscribers, when in reality their stock was given to them, the court said: ''We think that the representations were material. The fact that other persons had subscribed to the stock of the defendant in a large amount (especially that the two experts mentioned had thought well enough of the scheme to invest in it) would naturally influence the determination of the plaintiffs in reference to subscribing to the stock. With the exception of men of extremely cool judgment and great confidence in their own judgment, we all are apt to be influenced in our action and conduct by the action and

conduct of our fellows. Especially is this the case in speculations. . . . Now, of course, what concerns the purchaser is the value of the property. In itself, the price paid by the vendor is not of any moment, but it is of vital importance to the purchaser in forming his judgment as to value. The law recognizes this fact, and holds a false statement as to price paid actionable. *The principle is equally applicable to representations that other persons have purchased similar property, or subscribed for stock on the same terms upon which it is sought to induce any person to become a subscriber.*" (Italics ours.) (See, also, *Garrett Co.* v. *Clark,* 42 Misc. Rep. 610, [87 N. Y. Supp. 580]; *Rose* v. *Merchants' Trust Co.* (Sup. Ct.), 96 N. Y. Supp. 956; 29 L. R. A. (N. S.) 477, note; 20 N. Y. Ann. Cas. 86, notes; 2 Elliott on Contracts, 105.)

2. Defendants contend that in any event plaintiff could not have rescission for three reasons: "First—it was impossible to put defendants *in statu quo.* Second—plaintiff himself was guilty of laches. Third—by paying assessments on the stock with full knowledge of the facts plaintiff himself affirmed the transaction." We think there is no merit in any of these contentions.

[5] As to the first, it is sufficient to point out that the agreement of the defendants was in effect an agreement to sell to the plaintiff one share of the corporate stock for every dollar he subscribed and paid upon the syndicate agreement; that while it is true that the stock was issued to plaintiff directly from the corporation, nevertheless, it was so issued at the instance of the defendants and in compliance with the said agreement; and that if the offer by the plaintiff to return to the defendants the stock received by him had been accepted by them, it would have put them *in statu quo.*

Upon the second point it may be observed that laches arising solely from a delay of four months is no defense to an action for damages and that this is sufficient to defeat a general demurrer. With regard to the right to rescind the complaint shows that the plaintiff did not discover that Fishburn and Rogers were interested in the profits going to Rowan & Company and Joyce until June 1, 1915, and did not learn that he had a right to rescind on account of that fact until some time in November, 1915, and that

the offer to rescind was made on November 29, 1915. Under the peculiar circumstances of this case, and in view of the difficulty of determining the law as to the rights of a person in the position of the plaintiff, it is not surprising that he did not suspect that he had a right to rescind until he learned in November that other subscribers to the agreement, upon discovering the facts, had effected a rescission. [6] Under the rule applied in *Hannah* v. *Steinman*, 159 Cal. 142, 152, [112 Pac. 1094], the delay of four months in consulting an attorney cannot be said to be so unreasonable as to amount to laches.

[7] Nor do we think that defendants' third contention that the payment of assessments by plaintiff after his discovery of the fraud constituted an affirmance of the transaction which bars his cause of action for rescision, if for no other reason than that he was entitled to preserve the property so that he might be in a position to tender it back if he should later seek rescission.

3. The cause was argued in Department and submitted for decision. The submission was subsequently vacated and the cause set for further argument on the question, "What injury is it necessary to show in a case where there is a rescission only, as distinguished from a suit for damages?" In this connection defendants, in their memorandum filed following resubmission, contend that "if plaintiff did not show either that the property purchased was worth less than he paid for it or that it would have been worth more than it actually was worth if the representations had been true, in other words, if he did not show pecuniary injury, then he has not shown anything justifying either rescission or damages." As already appears, it is alleged that at the time the plaintiff paid the five thousand dollars to Rowan & Company and Joyce the interest which he thereby acquired had "a fictitious market value" of five thousand dollars, which value was created "by reason of the belief of the subscribers" that Fishburn and Rogers had subscribed on the same basis as the other subscribers; that it subsequently became known to the subscribers that Fishburn and Rogers had not subscribed on the same basis but were joint owners of the options with the other defendants, and that, by reason of this knowledge, plaintiff's stock became worth no more than two thousand five hun-

dred dollars, and has never since been of a greater value than three thousand dollars. **[8]** In our opinion, this is a sufficient allegation of damages for rescission. It is, of course, well settled that in an action of damages for deceit the plaintiff must allege and prove the precise amount thereof. But this is not the rule where rescission is sought. *Spreckels* v. *Gorrill,* 152 Cal. 383, [92 Pac. 1011], was an action for rescission and to recover the money paid by the plaintiff to the defendant as the price of certain corporate stock upon the asserted fraudulent representations of defendant as to patent rights. It is said at page 387, [92 Pac. 1014]: "It is also claimed that the complaint is insufficient because of the absence of any showing therein that any pecuniary damage was caused by the fraud alleged. It is true that there is no express allegation that plaintiff suffered pecuniary damage therefrom, but in cases of this character this is not necessary. That fraud which has produced and will produce no injury will not justify a rescission or support an action either for rescission or for damages, is an established principle of law and equity. But there is no rule that the injury must be of such a nature that it can be accurately measured in money. And we know of no rule of pleading which, in an action based upon a rescission between the parties or seeking to enforce such rescission, requires a statement that the fraud complained of had caused or would cause a specific amount of damages. It may be conceded that it must be shown that the plaintiff, by reason of the fraud, suffered an injury of a pecuniary nature, that is, an injury to his property rights as distinguished from a mere injury to his feelings, but it will be sufficient if the facts alleged show that material injury will necessarily ensue from the fraud, although the amount of the pecuniary loss is not stated." In *Wainscott* v. *Occidental etc. Assn.,* 98 Cal. 253, [33 Pac. 88], the plaintiff sued to rescind certain conveyances which he asserted he had been induced to make through the defendant's false representations. The court said: "'If any pecuniary loss is shown to have resulted, the court will not inquire into the extent of the injury; it is sufficient if the party misled has been very slightly prejudiced, if the amount is at all appreciable.' (2 Pomeroy's Equity Jurisprudence, sec. 898.) . . . In an action to re-

scind upon the ground of fraud, the fraud is the essential thing, and, while it must be coupled with loss, injury, damage, the precise amount of such damage is of secondary importance.'' This rule finds support in the following quotation from Black on Rescission and Cancellation, volume 2, page 901: ''When a stock subscription has been obtained by fraud, the subscriber is entitled to maintain a bill in equity to annul the same, without alleging or proving that he has sustained any pecuniary loss by reason of the fraud.'' (See, also, *Western States Life Ins. Co.* v. *Lockwood,* 166 Cal. 185, 195, [135 Pac. 496]; *Stern* v. *Lumber Co.,* 134 Fed. 509; *Mack* v. *Latta,* 83 App. Div. 242, [82 N. Y. Supp. 130, 135]; *Commonwealth Bonding etc. Co.* v. *Bomar* (Tex. Civ. App.), 169 S. W. 1060; *Johns* v. *Coffee,* 74 Wash. 189, [133 Pac. 4]; 22 Standard Ency. Procedure, 1001, note 66; 1 Cook on Corporations, p. 447; 1 Elliott on Contracts, p. 164; 14 Corpus Juris, 614, note 58.)

In the recent case of *Stillwell* v. *Rankin,* 55 Mont. 130, [174 Pac. 186], the suit was brought to secure the rescission of a contract for the purchase of certain shares of stock. The alleged fraudulent representations upon which plaintiff based his cause of action were as follows: That, plaintiff being a stockholder in the company, defendant, an officer of the company, ''stated to plaintiff that one hundred shares of the stock had been turned back to the company by a subscriber who was unable to pay for it, and solicited plaintiff to purchase the stock 'to help the said company out,' '' and plaintiff alleged that ''in reliance thereon he agreed to purchase the stock (which otherwise he would not have purchased).'' We quote from the opinion: ''Is it essential to the statement of a cause of action for the rescission of a contract for fraud that the plaintiff allege that he has suffered pecuniary loss? Authorities may be found which answer in the affirmative and most emphatically, but curiously enough, do not insist that the amount of such loss is material, if it is at all appreciable. . . . Courts of equity, like courts of law, do not concern themselves with wrongs which do not produce injury; but 'injury' and 'pecuniary loss' are not synonymous terms. . . . Most of the courts and text-writers employ the term 'damage' in the sense of injury; a few restrict its meaning

to financial loss. We prefer to adhere to the rule which gives to the term its broader significance, as including either pecuniary loss *or the alteration of one's position to his prejudice. . . .* If the allegations of this complaint are true, plaintiff was induced by fraudulent representations to assume obligations which otherwise he would not have assumed, and to purchase property which otherwise he would not have purchased. We deem the allegations sufficient to disclose damage within the meaning of that term which we adopt." (Italics ours.)

In *Vulcan Fire Ins. Co.* v. *Jorgenson,* 33 Cal. App. 763, [166 Pac. 835], the plaintiff sued to recover an alleged balance due on a subscription for certain shares of its capital stock. The defendant set up in his cross-complaint that his subscription was procured upon the false representation that a certain ·bank president, upon whose integrity and business capacity the defendant placed special reliance, was connected with the insurance corporation, and asked for the rescission of the contract and the recovery of the money paid. Judgment went for the defendant. Among the grounds urged for a reversal of the judgment was "that the record contains no allegation, evidence, or finding that the cross-complainant was in any way pecuniarily damaged by the alleged false representations." The appellate court said: "That such representations . . . are sufficient to entitle the subscriber to rescind, without proof of pecuniary damage suffered, is well settled." This language was objected to in a petition for a hearing in this court, but the petition was denied. In *Davis* v. *Butler,* 154 Cal. 623, at 627, [98 Pac. 1047, 1049], it was said, citing *Spreckels* v. *Gorrill, supra:* "It is not essential to the right to rescind a contract for the purchase of property that the purchaser should be able to show that the property purchased was worth less than he paid for it. It is enough that he was induced by false representations to buy property which would, if the representations had been true, have been worth more than it actually was worth."

The case of · *Bailey* v. *Fox,* 78 Cal. 389, [20 Pac. 868], is cited· by defendants. In that case the plaintiff had been induced, through false representations made by the defendant as to former profits in conducting the business, to

purchase an interest in the defendant's stock of hardware
and agricultural implements. The opinion declares: "The
complaint states no cause of action so far as it relates to
fraudulent representations respecting the question of
former profits of the business. It contains no allegation
that the plaintiff was induced thereby to pay a higher price
for the goods than he would otherwise have done, nor is it
averred that the business was not profitable after the plain-
tiff bought into it. In other words, there is nothing in the
complaint to show that the plaintiff was in any way injured
by the representations, admitting them to have been false.
. . . In order to entitle a party to rescind a contract, he
must not only show the fraud, but that as a result thereof
some damage has resulted to him." It was not held in
that case or in any other cited by the defendants, nor do
we know of any case holding that the damage suffered
must be capable of exact calculation in order to entitle the
party injured to rescind the contract. It is only neces-
sary that the allegation and proof must show an "appre-
ciable" amount of loss.

Plaintiff alleges in effect that he was induced by the
false representations to subscribe to the syndicate and that
the shares issued to him would, if the representations had
been true, have been worth two thousand dollars more than
their actual value at the time of the discovery of the fraud.
By these false representations, it is alleged, the plaintiff
was induced to part with his money, and, to the extent of
the difference between the alleged market value of the
stock—three thousand dollars—and the sum which such
stock would have been worth if the representations had
been true—five thousand dollars—the plaintiff has suffered
a pecuniary loss of two thousand dollars. In every case
of fraud, either where damages or rescission is sought, it
must be alleged and proved that the complainant has suf-
fered material injury. But it is the character of the fraud
constituting the cause of action which determines the ex-
tent to which the pleading and proof must go in order
to establish damage. As already pointed out, plaintiff
assumes to state his cause of action on the alternative
theory—that if he is not entitled to rescission, damages
may be awarded. [9] First, as to rescission: It is clear
from the authorities we have cited that the exact amount

of damage need not be shown, provided it be in an "appreciable" sum. [10] Where the action is for damages, however, the plaintiff must allege and prove that by reason of the fraud he has suffered damage in a definite amount. In the one case damage is predicated on the change in position; in the other on the extent of the pecuniary loss. [11] The measure of damages here would be the amounts paid in by the plaintiff, including the assessments, with interest thereon at the rate of seven per cent from the dates of such payments, less the value of the stock at the time of the discovery of the fraud. Plaintiff alleges that the factor which induced him to subscribe to the syndicate was his confidence in the financial standing and business judgment of Fishburn and Rogers, who, it was represented, had already subscribed for twenty-five thousand shares on the same basis as that upon which he was asked to invest. [12] While the value of the connection of Fishburn and Rogers with the syndicate may not be capable of ascertainment, nevertheless, if the plaintiff was induced by the defendants' false representations to change his position in reliance thereon, the lessened value of the stock would constitute damage for the purpose of rescission—the plaintiff "was placed in a worse position than he otherwise would have been." (2 Pomeroy's Equity Jurisprudence, 4th ed., sec. 898.) We think the complaint is sufficient under either theory.

4. Nor can we agree with defendants' contention, made in their memorandum filed following the resubmission of the case: "If there is any right of rescission . . . it is a right to rescind against the corporation, and there is no right on the part of a subscriber to rescind a subscription as against other shareholders or promoters." The only authorities which defendants cite on this point are *Western Bank* v. *Addie*, L. R. 1 H. L. (Sc.) 185; *Love* v. *Love*, 145 Ill. App. 150, and *Sim* v. *Edenborn*, 163 Fed. 655. The first of these cases held that the false representations of directors are imputable to the corporation, and one "who has been induced to purchase stock in reliance on such representations cannot be held to his contract." *Love* v. *Love, supra,* was a bill in equity for the partition of certain premises, and "the sole question" was "whether the lower court erred in appointing a receiver"—rescission

was not in any way involved. In *Sim* v. *Edenborn, supra,* the court held that the original complaint outlined a cause of action in equity, while purporting to be a case at law and praying for damages at law. Defendants' demurrer was, therefore, sustained. But in *Heckscher* v. *Edenborn,* 203 N. Y. 210, [96 N. E. 441], a case arising out of the same transaction, the defendant was the principal promoter and organizer of a syndicate, and the plaintiff asked that he be released from a contract which he had made as a subscriber to the syndicate on the ground that the defendant, by inducing him to become a party to the agreement, was guilty of fraud. The court said, in 203 N. Y., at page 226, [96 N. E. 446]: "It is of course true that in an action between two parties to a contract, one cannot avoid it as against the other, who is entirely innocent, on the ground that he was induced to make it by the fraud of a third party, wholly disconnected with the transaction. So far as I can find, however, this principle has never been applied in an action by the injured party against a person claiming protection as agent under the contract which he had fraudulently induced. But beyond this I do not think it can be said that the moneys of plaintiff's assignors were not paid to defendant under a contract for his benefit and to which he was a party. He was the promoter of the enterprise, and procured the execution of the syndicate agreement. By its express terms it was made by each subscriber, not only with the other subscribers, but also with him, as a syndicate manager, and it was for his benefit, not only in authorizing him to purchase the property in question, but also in conferring upon him general powers as a manager. If the contract be regarded as a single one between each subscriber on the one side and his fellow-subscribers and the managers on the other, it must follow that the fraud of either of the latter in inducing it would be a ground for rescinding it against all parties. If the agreement should be regarded as embracing two contracts, one made by each subscriber with his fellow-subscribers, and a second one made by him with defendant as agent and manager, it may be that in an action between the subscribers the contract could not be avoided because of the latter's fraud, although I have doubts about that.

In *Metropolitan Coal Consumers' Case,* 66 L. T. (N. S.)
700, it was held, after consideration of the principle now
being urged by defendant, that a subscriber could be re-
lieved from a subscription for corporate shares because of
false statements made by promoters in a prospectus issued
before the corporation was organized, 'although not made
by the company or its agents.' But, however this may be,
this is an action between the subscriber and the agent,
between whom in terms there existed a contract authorizing
the transactions here involved, and in view of this and the
surrounding circumstances I do not think it possible for
the latter to say that he was not a party to the contract
and to the transactions which occurred under it, within the
rule now being discussed.'' [13] In our opinion the prin-
ciple there invoked is applicable to the facts alleged in
this case. The defendants do not question the correctness
of this principle, but they attempt to distinguish that case
from the one at bar in (1) that whereas in the New York
case ''the property which the corporation acquired *was the
defendant's own property,''* here ''the defendants *never
owned the tract of land and never owned the stock''*; and
(2) the defendants here were not vested with any discre-
tion in purchasing property for the corporation, whereas in
the Heckscher case the defendant was authorized to exer-
cise a discretion. As to the first ground of attempted
distinction, we are not disposed to hold that, although
defendants held the options on the land in question and
undoubtedly did receive any profits there may have been in
the transaction, the contract of subscription may not be
rescinded as against them because they did not have the
title to the shares which plaintiff received or to the land
which those shares represented. Nor, in the view we take,
would the other distinction attempted to be drawn by de-
fendants make any difference. Plaintiff's cause of action
is based, not on the abuse of any discretion on the part
of defendants in purchasing the land on which they held
the options, but on their failure to disclose to him the in-
terest which Fishburn and Rogers had therein. As we have
said, a fiduciary relationship existed between the defend-
ants and the plaintiff, and, assuming—as we must—that
the allegations of the complaint are true, the defendants

should not be allowed to reap the benefit arising from their abuse of the confidence reposed in them.

It follows that the demurrer should have been overruled. Judgment reversed.

Shaw, J., and Olney, J., concurred.

Hearing in Bank denied.

All the Justices concurred, except Wilbur, J., and Lennon, J., who were absent, and Sloane, J., who did not vote.