TALMAGE v. SANITARY SECURITY CO.

JAMES v. SAME (two cases).

(Supreme Court, Appellate Division, Second Department.   June 7, 1898.)

1. RESCISSION OF CONTRACT—RELIEF IN EQUITY.
   An action against a corporation, in equity, to rescind a subscription for stock induced by representations false in fact, is not subject to the same stringent rules applicable to actions at law for damages for deceit.

2. SAME—FRAUDULENT REPRESENTATIONS OF AGENT.
   The fact that the officers of a corporation are innocent of participation in the wrong of an agent who has procured subscriptions to its stock by means of fraudulent representations constitutes no defense to an action by the subscriber to rescind the subscription.

3. SAME—KNOWLEDGE OF PRINCIPAL.
   Nor is it a defense that the agent who procured the subscriptions believed the representations true, if the officers knew that they were false, even though innocent of any responsibility for the agent's act in making them.

4. SAME—MATERIAL REPRESENTATIONS.
   A false representation made by an agent of a corporation to induce subscriptions to its stock, that specified persons—well known, and especially qualified to judge of its value—had subscribed, is material.

Appeal from special term.

Actions by John F. Talmage, Darwin R. James, and John W. James against the Sanitary Security Company.   From judgments in favor of defendant, plaintiffs appeal.   Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, and WOODWARD, JJ.

James McKeen, for appellants.

J. Berry, for respondent.

CULLEN, J.   These actions are brought to rescind the subscriptions of the several plaintiffs to the capital stock of the defendant, and to recover the installments paid thereon.   In its answers the defendant counterclaims for the unpaid amounts due on the subscriptions.   The special term dismissed the complaints on the merits, and rendered judgments in favor of the defendant for the balance of the subscriptions.   From these judgments the plaintiffs appeal. The three cases involve substantially the same state of facts.   They were tried together at the special term, and the appeals have been argued together before us.

We think it clear that the plaintiffs were imposed upon, and induced to subscribe on the faith of representations which at least were false in fact, if not fraudulently made.   The defendant was organized in July, 1894, with a proposed capital of $100,000.   The incorporators were James C. Bayles, the president; Edward A. Sumner, the secretary and attorney; and one Dean.   At the first meeting of the directors, $10,000 of full-paid stock was issued to Bayles for services rendered and to be rendered to the company, and a like amount to Sumner for similar services.   The only service stated definitely in the evidence seems to be the litigation which terminated in the decision of the court of appeals that such a corporation as the

defendant was not an insurance company.    People v. Rosendale,
142 N. Y. 126, 36 N. E. 806.    In the law reports the name of neither
of these persons appears as litigant, attorney, or counsel.    The ob-
ject of the company is stated in its certificate of incorporation to be
the sanitary inspection and certification of buildings and premises;
the sanitary care of premises, by which the company should guaranty
the sanitary condition of such premises; and the manufacture and
sale of sanitary materials and appliances.    At a meeting in January,
1895, the company purchased from Mr. Bayles, through an inter-
mediary, Green, a patent for pipe coupling, and in payment therefor
issued $30,000 of stock.    At the same meeting Bayles was employed
as general superintendent at $5,000 a year for the term of five years,
and Sumner as attorney and counselor at $3,600 a year for a like pe-
riod.    At or about this time the company sought to obtain cash sub-
scriptions to the remainder of its stock.    There can be no doubt
that one Wolf was authorized to obtain such subscriptions, and it
was through his solicitations that the plaintiffs made their subscrip-
tions.    The representations claimed to have been made by Wolf to
the various plaintiffs are substantially the same, and differ but in
details.    The plaintiff Darwin R. James testified that Wolf told
him that the cash stock was $50,000, and that all but $10,000 had
been subscribed, which $10,000 he wished him to take; that two
well-known gentlemen (giving their names) had subscribed to the
stock; that $30,000 of the stock had been reserved, which was to be
divided between the subscribers ratably in proportion to their cash
subscriptions; and that the company had business in sight, or in im-
mediate prospect, amounting to $120,000.    As a matter of fact, at
this time there had been no cash subscriptions to the stock, unless
possibly those of Bayles and Sumner for $2,000 each.    As I read the
evidence of Sumner, these were not cash subscriptions, nor are they
recited as such in the brief of the counsel for the respondent.    The
two persons named by Wolf as subscribers to the stock were gentle-
men well known in the community, and of exceptionally high standing
as health or sanitary experts.    In reality, the stock held by these
gentlemen was given them by Bayles or Sumner, and they had
not subscribed or paid for any stock.    The company had not made a
single contract for business, nor were any negotiations for business
then pending.    The only foundation for the statement as to the busi-
ness prospects of the company seems to have been the judgment of
the officers that there was a field for such business as the company
was to enter upon.    Wolf corroborates the testimony of the plain-
tiffs as to the representations made, except in reference to the two
sanitary experts having subscribed to the stock.    Wolf says that he
stated only that those persons were stockholders and directors.    Mr.
Bayles testified that he had never authorized Mr. Wolf to make the
representations, and never told Wolf that the facts, the basis of
such representations, existed, except as to the business prospects of
the company.    On this, Wolf and Bayles are in conflict.    But we
think there can be but little doubt that the representations were
made, and that on the faith of the representations the plaintiffs made
their subscriptions.

If we assume that no authority was given to Wolf to make the representations complained of to the subscribers, that would not relieve the defendant from responsibility. The rule is that the receipt and retention by the principal of the fruit and product of the fraud of the agent render the principal liable, though innocent of participation in the wrong. Bennett v. Judson, 21 N. Y. 238; Krumm v. Beach, 96 N. Y. 398; Fairchild v. McMahon, 139 N. Y. 290, 34 N. E. 779.

If we further assume that both Mr. Wolf and Mr. Bayles were innocent of any fraudulent intent to deceive the subscribers, this assumption would not deprive the plaintiffs of the right to avoid their contracts of subscription. An action in equity to rescind a contract induced by representations false in fact is not subject to the same stringent rules applicable to actions at law for damages for deceit. Hammond v. Pennock, 61 N. Y. 145; Kountze v. Kennedy, 147 N. Y. 129, 41 N. E. 414. That the representations of Wolf, if made (and we find that they were made), were false in fact, is conceded. If they had been made by Bayles, they would have been fraudulent, for Bayles knew that they were untrue. If Wolf had the knowledge of Bayles, then, too, they would have been fraudulent. Can the defendant retain the fruits of the false representation because, instead of negotiating through one agent, it has used two, and only one has made the representation, and only the other had knowledge of the falsity of the representation? We think not. Whatever may be the rule in an action at law for damages, a contract obtained under such circumstances, equity should not uphold. Writing of stronger cases than this (those of representations wholly innocent), Mr. Bigelow, in his work on Fraud (page 410), says:

"If the wrongdoer sue upon a contract thus obtained, the defendant may defend by alleging the misrepresentation, and, if he received anything of value in the transaction, that he has offered to restore the same to the plaintiff; or he may show the misrepresentation in reduction of the value of the contract, retaining what he has received. In either case the wrongdoer is deprived of any advantage, though not liable to any action for damages. * * * Any contract may be rescinded for innocent misrepresentation which was sufficient inducement thereto."

See, also, Hammond v. Pennock, supra; Kountze v. Kennedy, supra.

We think that the representations were material. The fact that other persons had subscribed to the stock of the defendant in a large amount (especially that the two experts mentioned had thought well enough of the scheme to invest in it) would naturally influence the determination of the plaintiffs in reference to subscribing to the stock. With the exception of men of extremely cool judgment, and great confidence in their own judgment, we all are apt to be influenced in our action and conduct by the action and conduct of our fellows. Especially is this the case in speculations. It is settled law that unless there is artifice, or peculiar attendant circumstances to throw a purchaser off his guard, a false statement of value by a vendor does not give an action for deceit. Ellis v. Andrews, 56 N. Y. 83. But it is equally settled law that a false statement by the vendor of what he has paid for the property does constitute a fraud

for which an action will lie. Fairchild v. McMahon, supra. Now, of course, what concerns the purchaser is the value of the property. In itself, the price paid by the vendor is not of any moment, but it is of vital importance to the purchaser in forming his judgment as to value. The law recognizes this fact, and holds a false statement as to price paid actionable. The principle is equally applicable to representations that other persons have purchased similar property, or subscribed for stock on the same terms upon which it is sought to induce any person to become a subscriber.

The judgments appealed from should be reversed, and a new trial granted; costs to abide the final award of costs. All concur.