[Civ. No. 2027.  First Appellate District.—May 29, 1917.]

## VULCAN FIRE INSURANCE COMPANY (a Corporation), Appellant, v. H. P. JORGENSEN, Respondent.

CORPORATION — FRAUDULENT PROCUREMENT OF STOCK SUBSCRIPTION—RESCISSION—PECUNIARY DAMAGE.—In an action by a corporation to recover an alleged balance due on a subscription for certain shares of its capital stock, where the defendant set up that his subscription was procured upon the false representation that a bank president, upon whose integrity and business capacity the defendant placed special reliance, was connected with the corporation, and sought rescission of the contract and recovery of the money paid, it is not necessary to aver or prove pecuniary damage.

ID.—PROMPTNESS OF RESCISSION—EVIDENCE.—The prompt rescission of a stock subscription contract is shown by evidence that immediately upon the discovery of the falsity of the representations, and within eight days of the making of the contract, the subscriber wrote to the president of the corporation repudiating the contract.

ID.—SUFFICIENCY OF NOTICE OF RESCISSION.—In making rescission of such a contract, it is sufficient to state that the reason for the action was that the subscription had been obtained by misrepresentation on the part of the corporation's agent, without enumerating the misrepresentations specifically.

ID.—RETURN OF STOCK UNNECESSARY.—Where a corporation merely undertakes to issue a certain number of shares of its stock upon the payment of the balance of the purchase price, there is nothing for the purchaser to return in making a rescission of the contract.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial.  Wm. S. Wells, Judge.

The facts are stated in the opinion of the court.

Otto Irving Wise, for Appellant.

Peck, Bunker & Cole, and Henry C. McPike, for Respondent.

LENNON, P. J.—In an action to recover the balance due from the defendant upon a subscription to stock in the plaintiff corporation, the defendant denied liability, and in a cross-complaint averred that he had rescinded his contract of subscription sued upon because of certain fraudulent representations of the plaintiff's agent by which it was induced, and prayed judgment for the recovery of the amount paid by him upon said subscription. The court rendered judgment in defendant's favor, and granted him the relief sought by his cross-complaint, basing its judgment upon findings, among others, as follows:

"In procuring said subscription the plaintiff was represented by and acted entirely through one J. B. Harper. . . . On said last-named day said J. B. Harper . . . went to the ranch and home of the defendant in the county of Merced . . . and as an inducement to defendant to subscribe for said capital stock stated to defendant as follows:

"That one J. F. Carlson, the president of the Central National Bank, in the city of Oakland, had given to said Harper, as the agent and representative of plaintiff, a letter directed to defendant, advising the defendant to become a purchaser and subscriber for capital stock in Vulcan Fire Insurance, Company, plaintiff herein, and that by some oversight he, the said Harper, had left said letter in his hotel, and that said J. F. Carlson was very angry with said Harper because he had not before solicited the subscription of defendant.

"That said Carlson was going to quit his position with said Central National Bank in Oakland within six months and take complete and active charge of the business of plaintiff and do nothing else; that said Carlson was head of plaintiff at that present time, but was not willing the general public should know about it, and that in accordance with the directions of said Carlson he, said Harper, had come to obtain defendant's subscription to said stock.

"At the time of the making of the aforesaid statement and representations, said J. B. Harper well knew that said defendant placed great reliance upon the business sagacity of said

J. F. Carlson and in his judgment as a business man, and also held the said J. F. Carlson in high esteem as a friend, and if defendant could be induced to believe that said Carlson had given a letter to Harper directed to defendant, advising defendant to subscribe for capital stock in said plaintiff corporation, and that said Carlson was anxious for defendant to do so, and was angry with said Harper because he had not before that time solicited said subscription from defendant, and that said Carlson was going to quit his position with said Central National Bank within six months and take complete and active charge of the business of plaintiff and do nothing else, and that said Carlson was at the head of plaintiff at that present time but was not willing the general public should know about it, and that in accordance with the directions of said Carlson Harper had come to obtain defendant's subscription for said stock, said defendant would subscribe for the same; and the said statements and representations were so made by the said Harper with the design and for the purpose of obtaining from said defendant said subscription.

"The said defendant believed the said statements . . . and relied upon the said statements and all of them, and believing the same and relying upon them, the said defendant then and there paid to the said Harper, as agent and representative of plaintiff, the sum of $750, being $5 per share upon 150 shares of the capital stock of plaintiff, for which said defendant then and there subscribed and agreed to pay to plaintiff the further sum of three thousand dollars, the balance of said subscription price.

"The said statements hereinabove referred to . . . were and each of them was false and untrue, and the said Harper . . . well knew that the same and each of them was false and untrue, and he well knew that the said defendant believed the said statements to be true and that he relied upon them and each of them as being true, and was induced by them and each of them to pay the said sum of money . . . to plaintiff, and became a subscriber for said 150 shares of stock, believing and relying upon the said statements, and there was no other inducement to the said defendant than as hereinabove stated to become the subscriber for said stock, and each and all of said representations were untrue and were material, and without the said statements and representations so made to the defendant, said defendant would not have paid to said

Harper for plaintiff or to the plaintiff said sum of $750, or become a subscriber for said capital stock.''

The court also found that the defendant, upon discovering the falsity of the representations, promptly rescinded his subscription, and, having reference to the duty of one seeking to rescind a contract, to return to the other party to it anything received under it, found that the defendant had received nothing.

In urging a reversal of the judgment and order denying its motion for a new trial, the plaintiff makes several contentions, viz., (1) that the record contains no allegation, evidence, or finding that the cross-complainant was in any way pecuniarily damaged by the alleged false representations; (2) that he failed to rescind promptly upon discovery of the facts entitling him to rescind; (3) that the notice of rescission by the cross-complainant was insufficient for various reasons, but chiefly because it failed to state the grounds upon which the right was attempted to be exercised; (4) that the defendant lost his right to rescind because he did not offer to return whatever of value he had received, and (5) errors of law in the admission of certain testimony.

(1) Addressing ourselves to the first of these contentions, in an action such as this, where the defendant and cross-complainant merely recites the payment of his subscription and asks for its rescission, an allegation or proof of pecuniary damage sustained by him is not necessary. The author of Cook on Corporations, speaking of the rescission of a subscription to corporate stock, says:

''It is the duty and right of directors, without waiting for a bill in equity or other legal proceedings, to revoke a subscription contract, and remove from the stockholders' list the name of a subscriber who reasonably proves that he was induced to subscribe by fraudulent representations chargeable to the corporations and who requests a rescission of the subscription. . . . Where, upon such a demand being made by a subscriber, the directors refuse to dissolve the subscription contract, the subscriber need not always resort to a bill in equity to have the contract set aside for fraud. A mere notification to the corporation is generally sufficient.

''§ 154. The most common remedy of a subscriber induced by fraud to subscribe is to wait until the corporation brings suit to collect the subscriptions, and then to set up the fraud

as a defense.   Nearly all of the cases in this country are cases where this remedy has been adopted . . . "   (1 Cook on Corporations, secs. 153, 154, p. 422.)

That such misrepresentations as are complained of in the case at bar are sufficient to entitle the subscriber to rescind, without proof of pecuniary damage suffered, is well settled. At section 145  (page 410) of the work just referred to the author says: "Any false statement by the authorized agents of a corporation in regard to the past or present status of the corporate enterprise or material matters connected therewith, whereby subscriptions are obtained, is a fraudulent representation.  Thus, a false statement that . . . certain individuals are directors . . . have been held to constitute a fraudulent representation entitling the subscriber induced thereby to subscribe to the remedies provided for him by law in such cases . . . "  (citing *Blake's Case,* 34 Beav. 639, [55 Eng. Reprint, 782] ; *Munster's Case,* 14 W. R. 957; *In re Metropolitan etc. Assn.,* 64 L. T. 561; *Ex parte Brown,* 95 L. T. 756).

The rule announced was followed in the case of *Coles* v. *Kennedy,* 81 Iowa, 360, [25 Am. St. Rep. 503, 46 N. W. 1088].)  There one of the representations by which the complaining subscriber had been induced to take the stock was that one L. H. Mallory, a resident for many years of the community and known as a man of large business experience and capacity, and a successful business man, had subscribed for five thousand shares in the company, whereas in truth he was given the stock for the influence of his name in procuring subscriptions.  In speaking of this feature of the case the court said: "The fact that Mr. Mallory was not to pay for his stock was concealed from the appellee.  To have disclosed it would have been to defeat the very purpose for which the five thousand shares were given to Mr. Mallory.  We have no doubt but the belief that Mr. Mallory had subscribed for five thousand shares of the stock, and that he had or was to pay for the same, operated as an inducement to appellee to subscribe for the stock and execute the contract in question.  This was such a fraud as cannot have the approval of a court of equity, and for which the contract induced by it should be canceled and held for naught."

In the case at bar it plainly appears that the sole inducing cause of the subscription was the false statements as to the

connection of Mr. Carlson with the corporation plaintiff—a man in whose integrity and business capacity the respondent placed special reliance. We think it clear that such a subscription could be rescinded without the subscriber averring or proving pecuniary damage.

(2) The second contention of the appellant, that the respondent failed to rescind promptly, is also, we think, untenable. The evidence shows that immediately upon discovering the falsity of the representations, and within eight days of the making of the contract of subscription, the respondent wrote to the president of the company repudiating the contract.

(3) Nor do we think that the appellant's third contention can be upheld. The letter of rescission unequivocally stated that the reason for this action on the part of the respondent was that the subscription had been obtained by misrepresentation and fraud on the part of the company's agent. It is true that the specific misrepresentations complained of were not enumerated, and that no reply was vouchsafed by the wife of the respondent to a letter written to her by the attorney of the appellant inquiring of what they consisted. But the most detailed enumeration of those representations would not have made the attempted rescission more unequivocal, although undoubtedly the possession of them would have enabled the plaintiff to form an opinion as to whether the respondent's withdrawal from his contract was justified. The appellant, however, had other means of finding out what these representations were inasmuch as they were made by its own agent, and we cannot assume that the agent would not have disclosed them to his principal upon the latter's demand. In the case of *Savage* v. *Bartlett*, 78 Md. 561, [28 Atl. 414], speaking of the rights of a stockholder with regard to a corporation to the stock of which he has subscribed, induced by false representations, the court says: "A notice to the company that he rescinds the subscription, giving the reasons therefor, is sufficient."

(4) Nor can we give our adherence to the appellant's fourth contention. The respondent having received nothing from the appellant, could return nothing. The appellant had merely undertaken to issue a certain number of shares of stock upon payment of the balance of the purchase price. While this was a contingent obligation on the part of the corporation, it was *ipso facto* canceled upon the rescission by the

stockholder of his subscription, and the corporation was thereby placed in the same position as if stock issued by it had been returned by the subscriber. The argument that a certain number of shares had been "set aside" for the subscriber, and that the latter therefore had received something which he failed to return, has not even the merit of plausibility.

But one other point made by the appellant requires mention. The respondent's wife was a witness at the trial on his behalf, and, over the objection of the appellant, was permitted to answer affirmatively the following question: "Did you rely on a statement of Mr. Harper that he had a letter from Mr. Carlson and that Mr. Carlson was to be president of the Vulcan Fire Insurance Company prior to your subscribing for this certificate of stock?" The objection was that the question was incompetent, irrelevant, and immaterial, and assumed facts not in evidence. While the subscription sought to be canceled was one made by the husband, and therefore ordinarily it would be immaterial what effect the representations made in obtaining it had upon the wife, it sufficiently appeared that the wife was present at the interview between the agent and her husband and took an active part therein. The company's reply to the letter of cancellation was addressed to her, and was couched in such terms as if she were the active head of the marital community whose funds had been invested in the stock; and it was quite apparent from the evidence of the whole transaction that when the company's agent in his efforts to sell the stock to the respondent had won the lady over, he had gained three-fourths of the battle. But quite apart from this the evidence of the husband that he was induced by the agent's untrue representations to enter into the subscription contract was uncontradicted, so that even if the court ought not to have permitted this question to be answered, its action in so doing cannot be held to have caused any prejudice to the appellant.

For the reasons given the judgment and order are affirmed.

Kerrigan, J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 27, 1917.