[Civ. No. 2935.    Third Appellate District.—March 8, 1926.]

## CALIFORNIA CREDIT AND COLLECTION CORPORATION, Appellant, v. ALBERTIS GOODIN, Respondent.

[1] FRAUD—CORPORATIONS—STOCK SUBSCRIPTION—PROMISSORY NOTE—RESCISSION—RESTORATION.—A subscriber for stock, who executed a promissory note to the corporation for the stock, and who in an action upon said note set up the defense that he was defrauded into entering into the subscription agreement and executing said note, received nothing of value from the corporation under or by reason of the contract, where the contract provided that no stock was to be issued until the amount of the subscription and the note given therefor was paid in full in cash, and it was admitted that the amount of the note was never paid and that the stock was never issued; and under such circumstances the title to the stock remained in the corporation and the subscriber really never became a stockholder therein.

[2] ID.—ACTION UPON PROMISSORY NOTE—DEFENSE.—In an action by the assignee of a corporation upon a promissory note executed and delivered by the defendant to said corporation for stock subscribed for by the defendant, the defense that said defendant was induced to execute and deliver said note and subscription contract through the fraud of the corporation and that said note was therefore without obligatory force was available to the defendant, where the latter did not receive anything of value from the corporation and did not ask for affirmative relief.

[3] ID.—DAMAGES—PLEADING—EVIDENCE.—In such action, where the consideration did not pass, it was not necessary for the defendant to plead and prove damage; that is, where the effect of the defense set up would only be to vitiate or destroy the binding force of the contract on the ground of fraud and compensation by way of damages is not sought, damage need not be specially pleaded or proved.

[4] ID.—PROOF OF FRAUD—DAMAGE—PLEADING.—In such action, the damage to the defendant is in the fact that because of the fraud by means of which the contract has been procured, the defendant will not and cannot secure the thing he contracted for, and which constituted an important part of the consideration for the contract. So, in such case, or even where substantial detriment

---

1.   See   6 Cal. Jur. 901.
2.   See 12 Cal. Jur. 786; 12 R. C. L. 408.

    76 Cal. App.—50

has been suffered by reason of the fraud but damages therefor are waived by the defendant and no other relief is asked for than that of being released from the obligations of the fraudulently procured contract, the mere plea and proof of the fraud is sufficient and amounts to the plea and proof of the damage or injury which is essentially the concomitant of the fraud.

[5] ID.—REMEDIES.—Section 3412 of the Civil Code gives a specific remedy for the cancellation of a contract obtained by fraud or which is voidable for other reasons, or is void, and where a note or other contract has been obtained by fraud, and innocent third parties have not acquired equities therein, the defendant, instead of proceeding under section 3412 of the Civil Code, may abide his time, and, when enforcement is sought against him, excuse himself from performance by proof of fraud.

[6] ID.—REPRESENTATIONS—MATERIALITY OF.—In such action, the statements made to the defendant by the agent of the corporation at and before the time said defendant executed the subscription contract and promissory note, that the corporation had definitely decided to locate its packing plant at a certain place, and to that end had voted to appropriate a prodigious sum from its financial resources for the purpose of constructing the necessary buildings and of installing the machinery required for the operation of such an enterprise, and had constructed a spur railroad track to facilitate such construction and for its conveniences otherwise, constituted material representations.

[7] ID. — PROMISE TO PERFORM FUTURE ACT — REPRESENTATIONS. — While a mere promise to perform an act in the future is not, in a legal sense, a representation, nor the effect of a failure to perform such promise is to convert it into a false representation, yet, if the promise is accompanied with statements of existing facts which show the ability of the promisor to perform his promise, and without which the promise would not be accepted or acted upon, such statements are denominated representations, and, if falsely made, are grounds of avoiding the contract, though the thing promised to be done lies wholly in the future.

[8] ID.—PURCHASE OF STOCK—FALSITY OF REPRESENTATION.—In such action, the representation made to defendant by the corporation's agent and upon which the defendant in part relied in executing the subscription contract and the note made at the same time, to the effect that four well-known, well-to-do, prosperous, and prominent citizens of the county in which defendant resided, with whom and whose business success defendant was acquainted,

---

5. See 12 Cal. Jur. 787.
7. See 12 Cal. Jur. 734, 736; 12 R. C. L. 254, 257.

had bought large blocks of stock in said corporation, when, as a matter of truth, they, with the exception of one, had bought no stock at all therein and had not at that time agreed to do so, is itself sufficient to vitiate the contract and the note in suit because of the falsity of such representation.

---

(1) 13 **C. J.**, p. 621, n. 63; 14 **C. J.**, p. 428, n. 28, p. 429, n. 48; 27 **C. J.**, p. 37, n. 47, p. 49, n. 16.   (2) 14 **C. J.**, p. 589, n. 95. (3) 13 **C. J.**, p. 394, n. 6; 14 **C. J.**, p. 655, n. 85 New; 26 **C. J.**, p. 1182, n. 93, p. 1183, n. 99 New.   (4) 14 **C. J.**, p. 588, n. 94. (5) 14 **C. J.**, p. 588, n. 94, p. 663, n. 96.   (6) 14 **C. J.**, p. 603, n. 74. (7) 14 **C. J.**, p. 609, n. 14, 15.   (8) 14 **C. J.**, p. 605, n. 90, p. 607, n. 2.

APPEAL from a judgment of the Superior Court of Yolo County.   W. A. Anderson, Judge.   Affirmed.

The facts are stated in the opinion of the court.

J. R. Cunnyngham and Daly B. Robnett for Appellant.

Grant & Bailey, for Respondent.

HART, J.—The object of this action is to recover on a promissory note executed and delivered by the defendant to the Virden Packing Company for the sum of $750. The note was dated November 7, 1920. Prior to the commencement of the action and after it had matured or become payable the note was assigned by the payee therein named to the plaintiff. These facts and the fact that no part of said note has been paid and the further fact of the refusal of defendant to pay the note upon its maturity are alleged in the complaint, and the prayer is for judgment in accord with the claim of plaintiff as to the several amounts (principal, interest and attorney's fee) alleged to be due, owing, and unpaid on the obligation.

The amended answer admits the execution and delivery of the note by defendant to the Virden Packing Company and that the same has not been paid, and alleges that the same was made without "any consideration whatsoever." Said answer also sets up fraud on the part of the plaintiff's assignor in inducing defendant to execute the note and a certain agreement of which said note was the outgrowth. The facts upon which said defense is predicated are set out with

much particularity of detail and are, as so alleged, substantially embraced within the findings of the court and so declared to be true. It should here be explained that the transcript here contains the record in several different actions brought by the plaintiff against as many different defendants, including the respondent herein, upon promissory notes given by said defendants to the plaintiff's assignor and that these actions, for the purposes of the trial thereof, were consolidated and tried together and it was stipulated by counsel on both sides that the testimony taken in the several cases should be considered as applying to all the cases, where applicable.

The facts, however, as found by the court, are, in substance, as follows: That the Virden Packing Company, a corporation, organized as such for the purpose of establishing and carrying on a meat-packing plant, and to that end to buy and sell cattle, sheep, and hogs, and to refrigerate and preserve the same, and to build the necessary buildings for the same and also in connection therewith to establish and maintain stockyards, procured the defendant to enter into an agreement to subscribe for ten shares of its stock at $100 per share; that, upon the execution of said agreement by the parties and as a part of the same transaction, the defendant paid to said corporation in cash, in part payment for said stock, the sum of $250 and delivered to the corporation his promissory note (the one in suit) for the balance, $750; that, in order to induce defendant to make said subscription agreement and also said note, said corporation "falsely and fraudulently represented to this defendant that said . . . Packing Company had located its packing house, packing plant and stockyards at West Sacramento, in Yolo County, State of California"; that it had purchased land in West Sacramento upon which to erect and maintain its packing-house, etc.; that, when soliciting said subscription for said shares of stock from defendant, said company exhibited to defendant pictures of the buildings and plans for a packing plant, etc., and at the same time stated to defendant that said pictures and plans represented the buildings, etc., of said packing plant which were to be erected by said corporation upon said lands so purchased in West Sacramento for that purpose, and where

said corporation had theretofore located its packing-house, packing plant, and stockyards; that said corporation had voted to spend $1,500,000 in the construction of said buildings, packing plant, stockyards, etc., upon the lands purchased by it for that purpose in West Sacramento; that said corporation further falsely and fraudulently stated and represented at said time to the defendant that it had put in a spur-track to their premises so purchased by it in West Sacramento, and that it had theretofore placed, and at said time was placing, materials on said premises at West Sacramento for the erection of said buildings, packing-house, and packing plant; that said corporation further falsely and fraudulently stated and represented to defendant that many persons with whom he (defendant) was acquainted and upon whose judgment he relied, and whose names defendant cannot "at this time recall," and particularly stated to defendant that "J. W. Browning, of Grimes, had subscribed for $25,000.00 worth of stock of said Virden Packing Company; that Fred McCullough, of Dunnigan, California, had subscribed for $25,000.00 worth of the capital stock, and that Frank Edson, of Knights Landing, California, and one of the Supervisors of the County of Yolo, California, had made a very liberal subscription; that each and all of said men so mentioned, as aforesaid, were men of large financial interests, business experience and capacity, and were successful business men and that said defendant was well acquainted with each and all of said persons, and that he relied upon said representations and upon the business experience and capacity of the said Browning, McCullough and Edson"; that said Virden Packing Company "furthermore stated and represented that it had finally and definitely located its buildings, packing plant and packing-house and stockyards in West Sacramento, County of Yolo, State of California." It is then found that said company had not located its buildings, packing-house, etc., or either or any of them, in West Sacramento, Yolo County, or at any other place in the said county; that it had not purchased land in West Sacramento upon which to erect buildings, etc., for a packing plant and had not established stockyards at West Sacramento or elsewhere in the county of Yolo; that it never intended to do so; that it never voted to spend $1,500,000 or any other sum in the erection of buildings, packing plant,

etc., and stockyards at West Sacramento, or elsewhere, in said county of Yolo; that said company never "put in a spur-track in to their premises in West Sacramento," nor placed materials thereon for the erection of buildings, etc., at West Sacramento, and that said company "had done nothing toward the building and erection of said buildings, or any of them; that neither said J. W. Browning nor said Fred McCullough purchased any stock in said Packing Company, of any kind or in any amount whatsoever, and that neither is a stockholder in said company, and did not subscribe for stock in said company in any amount whatsoever; that said Frank Edson did subscribe for one share and only one share of the stock of said company, and that he had never at any time subscribed for more than one share therein; that said Browning and said McCullough, at the time the representations were made by said company that they had purchased or subscribed for shares of the stock of said company, were not subscribers to the capital stock thereof, and that said Edson had subscribed for but one share thereof; that all of said representations were by said Virden Packing Company at said time known to be false, and were false, and that said Virden Packing Company never intended at said time and had no intentions of building and erecting said buildings, packing house, packing plant, and *or* stockyards, or either or any of them, at West Sacramento, or elsewhere in the County of Yolo, State of California, but that said representations, and each and all of them, so made, as aforesaid, were made by the said Virden Packing Company with the express intent and purpose of cheating and defrauding this defendant and of inducing him to subscribe for said shares of stock of said Virden Packing Company and to induce this defendant to make, execute and deliver to the said Virden Packing Company said promissory note as hereinabove set forth; that this defendant is a farmer and resident of the County of Yolo, State of California, and engaged in raising livestock in the County of Yolo, State of California, and was desirous of supporting a corporation that would build and erect and maintain a packing house, packing plant, and *or* stockyards in the County of Yolo, State of California, which would thereby give to this defendant a ready local market for the stock that he might raise, and would build up and increase the stock business and

the transactions arising therefrom in which this defendant was and is engaged; that this fact was well known to the said Virden Packing Company, a corporation, at said time, and that this defendant would not have purchased stock in said corporation, or any other corporation to build, erect and maintain a packing house, packing plant, and *or* stockyards, or any, or either of them, at any other place than in the County of Yolo, State of California.''

The defendant claimed and asked for no affirmative relief, and the judgment was that ''plaintiff take nothing by reason of its complaint,'' and that defendant ''do have and recover from said plaintiff his costs of suit herein incurred.''

The appeal is by the plaintiff from said judgment and is supported by a record of the proceedings of the trial prepared under the authorization of section 953a of the Code of Civil Procedure.

The point first made by the appellant is that the defendant, if in any event he was entitled to avoid the obligations of the note in suit, should have invoked either of the only two remedies available to one claiming that he was induced to enter into a contract through the false representations or fraud of the other party, to wit: 1. Upon the discovery of the fraud to rescind the contract and ask for a recovery of whatever he may have paid or parted with by reason of the contract, in which case he must, of course, give notice of the rescission and return or offer to return everything of value which he had received under the contract; or, 2. Affirm and stand upon the contract and sue to recover whatever damages he may have suffered by reason of the fraud. To support that position, appellant cites these cases: *Hickman v. Johnson,* 36 Cal. App. 342 [178 Pac. 145]; *McColgan v. Muirland,* 2 Cal. App. 6 [82 Pac. 1113]; *Field v. Austin,* 131 Cal. 379 [63 Pac. 692]; *Brandenstein v. Johnson,* 140 Cal. 29 [73 Pac. 744]; *Munson v. Fishburn,* 183 Cal. 206, 216 [190 Pac. 808]; *Hines v. Brode,* 168 Cal. 507 [143 Pac. 729]. These cases, while, of course, laying down sound principles governing actions at law or suits in equity founded upon fraudulently procured contracts, do not sustain the contention of appellant. Some of them are actions based upon rescission in which the plaintiff failed to maintain his action because he had not restored or offered to restore what of value he had received under the contract from the

other contracting party. There is to be found in one or two of the cases a statement which, when considered without reference to the facts of the particular case in which it is made, might be understood as an announcement by the court that a party defrauded into entering into a contract for the sale of property has but two remedial courses open to him, and that they are those suggested by appellant and mentioned hereinabove. Obviously, as the cases named declare, one who rescinds a contract on the ground of fraud in its procurement must restore or offer to restore to the other party what he 'has received of value under the contract, or, as the rule is often stated, he must restore the other party to *statu quo* before he is entitled to a rescission. A party cannot rescind a contract whereby he has purchased or agreed to purchase property and at the same time keep the property. It is likewise true, as some of the cases named declare, that in an action for damages for deceit based upon fraud in the procurement of a contract, damage must be pleaded and proved. [1] The defendant never received anything of value from plaintiff under or by reason of the contract. As shown, the contract expressly provided, and so it was agreed by the parties, that no stock "is to be issued until the amount of this subscription and the note or notes given therefor are paid in full in cash," and it is admitted by the pleadings and was at the trial that defendant never paid the amount of the note given for the balance to be paid on his subscription and that the stock was never issued to defendant. There was, therefore, as before stated, nothing of value received by defendant under the terms of the contract. Hence, the title to the stock remained in the packing company and the defendant really never became a stockholder therein. (*Rose* v. *Foord*, 96 Cal. 152 [30 Pac. 1114]; *Vulcan Fire Ins. Co.* v. *Jorgensen*, 33 Cal. App. 768 [166 Pac. 835]; 14 Cor. Jur., pp. 428, 429.) As shown, defendant asks for no affirmative relief. He merely interposes a defense involving an objection to the enforcement of the note on the ground that it is in law without obligatory force for the reason that he was procured or induced by plaintiff's assignor to execute and deliver it to the latter by fraud or false representations. [2] That such a defense is available in a case of this character—that is, where defendant has not received anything of value from the other party, as has been

shown is true here—is definitely attested by the authorities. (See *Toby* v. *Oregon etc. R. R. Co.,* 98 Cal. 498 [33 Pac. 550] ; *Russ L. & M. Co.* v. *Muscupiabe L. & W. Co.,* 120 Cal. 521, 527 [65 Am. St. Rep. 186, 52 Pac. 995] ; *Hart* v. *Church,* 126 Cal. 471 [77 Am. St. Rep. 195, 58 Pac. 910, 59 Pac. 296] ; *Simon Newman Co.* v. *Lassing,* 141 Cal. 174, 178 [74 Pac. 761] ; *Cox* v. *Schnerr,* 172 Cal. 375, 383 [156 Pac. 509] ; *Estate of Cover,* 188 Cal. 133, 140 [204 Pac. 583] ; *Mundorff* v. *Ramm,* 66 Cal. App. 553 [226 Pac. 825] ; *California Credit & Col. Corp.* v. *Randall,* 76 Cal. App. 785 [244 Pac. 958].)    [3]    Nor, in a case of this character, where the consideration has not passed, is it necessary for the defendant to plead and prove damage.    (*Kelley* v. *Central Pac. R. Co.,* 74 Cal. 557, 561 [5 Am. St. Rep. 470, 16 Pac. 386] ; *Munson* v. *Fishburn,* 183 Cal. 206, 218 [190 Pac. 808] ; *Vulcan Fire Ins. Co.* v. *Jorgensen,* 33 Cal. App. 763, [166 Pac. 835].)    This statement is to be understood as meaning that damage in such a case—that is, where the effect of the defense set up would only be to vitiate or destroy the binding force of the contract on the ground of fraud and compensation by way of damages is not sought— need not be specially pleaded or proved.    Of course, in all such cases damage or injury is of the essence of the action. Every transaction brought about by fraud must result in damage or injury to the party who has thus been drawn into it.    Damage necessarily follows from the fraud.    This is so whether substantial damage susceptible to appraisement in terms of money has or has not resulted.    [4]    The damage is in the fact that, because of the fraud by means of which the contract has been procured, the defendant will not and cannot secure the thing he contracted for, and which constituted the consideration for the contract.    So, in such case, or even where substantial detriment has been suffered by reason of the fraud but damages therefor are waived by the defendant and no other relief is asked for than that of being released from the obligations of the fraudulently procured contract, the mere plea and proof of the fraud is sufficient and amounts to the plea and proof of the damage or injury which is essentially the concomitant of the fraud.    At all events, it would be entirely incompatible with a just conception of a rational system of

remedial law to hold it to be true that a party drawn into the making of a contract through fraudulent representations as to the subject matter thereof may not obtain judicial sanction of an application, in appropriate form, for his release from the obligations of such contract without pleading and proving that by reason of such engagement he has actually suffered substantial damage or damages which must be measured and may be compensated for in money. But such is not the law. Section 3412 of the Civil Code opposes such a theory or notion. [5] That section gives a specific remedy for the cancellation of a contract obtained by fraud or which is voidable for other reasons, or is void, and as has been shown the cases above named and others not named are as one in holding that, where a note or other contract has been obtained by fraud, and innocent third parties have not acquired equities therein, the defendant, instead of proceeding under section 3412 of the Civil Code, "may abide his time, and, when enforcement is sought against him, excuse himself from performance by proof of fraud." (*Hart* v. *Church*, 126 Cal. 471, 479 [77 Am. St. Rep. 195, 58 Pac. 910, 913].)

The findings are amply supported. It was admitted by the plaintiff that Thomas J. Brooks, the party representing the packing company in the transactions upon which this action is founded, was the duly appointed and acting agent of the Virden Packing Company and as such authorized to sell the stock of the company. Defendant admitted the execution by him of the subscription contract and the note in suit. The defendant testified that, at and before the time he executed the contract and the note, the said stock salesman of the packing company stated and represented to him that the company intended locating its packing plant and stockyards at West Sacramento, in Yolo County, and had already purchased land at said place suitable and sufficient for that purpose; that it had laid a "spur-track connecting with the plant and had the machinery on the ground to start up business, and he also said that he had sold stock around there to his neighbors, Fred McCullough Brothers, Perry Hiatt and Johnny Browning; and he said Mr. Edson had taken a large portion of it. Q. Did he tell you the amount of the stock that any of these men had subscribed

for? A. Well, he said Fred McCullough had bought a large portion of the amount; that Mr. Edson had bought a large share. He didn't say what Mr. Browning or Hiatt had bought. He said they were going to spend over a million dollars in machinery in fixing up the plant. Q. Did he say what kind of a plant it was? A. A packing house, he said. Q. And did you understand what kind? A. He told me we would have a local market for our stock close home in Yolo County.'' Defendant further testified that he was acquainted with Fred McCullough, John Browning, Perry Hiatt, and F. B. Edson, the last named a member of the board of supervisors of Yolo County, and that he knew they were men of extensive business interests and that he had confidence in their business judgment. Defendant testified that he believed all the said representations and would not have executed the subscription contract and the note in suit or the note of which it was a renewal if he had known at the times of those transactions that such representations were untrue. It was shown that, although the Virden Packing Company purchased some land at West Sacramento subsequent to the occurrence of the above-mentioned transactions, it never proceeded further toward the establishment of a packing plant and stockyards at said place, but finally took over an established packing plant in the city of San Francisco, where, ever since, the company has carried on the packing business. It was further shown and, in fact, not denied, that the company never caused the machinery necessary for the building and equipment of such a business to be brought to West Sacramento. It was further shown that Browning, Hiatt, and McCullough, at the time Goodin entered into the engagements involved herein, had not purchased or agreed to purchase a single share of stock in the company. Edson did purchase one share of said stock but only one share.

Defendant testified that he did not learn of the falsity of the representations until after he had renewed the note. His testimony in that particular was not contradicted. Indeed, there was no attempt to controvert any of the facts to which defendant testified, nor was there any attempt to contradict the testimony of other witnesses to the effect that the packing company never at any time took any steps in

the direction of establishing a packing plant at West Sacramento, other than the fact that it purchased some land at said place, as to which fact, however, the court, with apparent justness, found, from all the circumstances, which the evidence showed preceded, attended, and succeeded such purchase, that the same was not made with any definite or settled intention on the part of the company of building thereon a packing plant and stockyards, or that at any time it ever had any such intention definitely established in its mind. [6] The statements made to defendant by the agent of plaintiff's assignor and which statements the court upon sufficient evidence found not to be true that the company had definitely decided to locate its plant at West Sacramento, in Yolo County, and to that end had voted to appropriate a prodigious sum from its financial resources for the purpose of constructing the necessary buildings and of installing the machinery required for the operation of such an enterprise, and had constructed a spur railroad track to facilitate such construction and for its conveniences, otherwise, constituted material representations. They involved more than a mere promise to do certain acts in the future. They involved representations that the company had already fixed or definitely decided and determined to establish its plant in the county in which defendant resided and carried on the stock-raising business, thus making it the more convenient for and advantageous to him in the matter of disposing of the products of his business, and that such decision and determination had already been accentuated in a practical manner by making certain essential preliminary arrangements for the establishing of the packing plant and stockyards at said place. [7] While a mere promise to perform an act in the future is not, in a legal sense, a representation, nor the effect of a failure to perform such promise is to convert it into a false representation, yet, if, as is the fact here, "the promise is accompanied with statements of existing facts which show the ability of the promisor to perform his promise, and without which the promise would not be accepted or acted upon, such statements are denominated representations, and, if falsely made, are grounds of avoiding the contract, though the thing promised to be done lies wholly in the future." (*Russ Lumber & Mill Co.* v.

*Muscupiabe, L. & W. Co.*, 120 Cal. 521, 529, 530 [65 Am. St. Rep. 186, 52 Pac. 995, 998].) **[8]** But the representation made to defendant by the packing company's agent and upon which he in part relied in executing the subscription contract and the note made at the same time, to the effect that four well-known, well-to-do, prosperous, and prominent citizens of Yolo County, with whom and whose business success defendant was acquainted, had bought large blocks of stock in said company, when, as a matter of truth, they, with the exception of one, had bought no stock at all therein and had not at that time agreed to do so, is itself sufficient to vitiate the contract and the note in suit because of the falsity of such representation. (*Munson* v. *Fishburn*, 183 Cal. 206, 213, 214 [190 Pac. 808].) That case expressly approves the following from *Talmage* v. *Sanitary Security Co.*, 31 App. Div. 498 [52 N. Y. Supp. 139], and which applies with cogent pertinency to the proposition presently in hand:

"The fact that other persons had subscribed to the stock of the defendant in a large amount (especially that the two experts mentioned had thought well enough of the scheme to invest in it) would naturally influence the determination of the plaintiffs in reference to subscribing to the stock. With the exception of men of extremely cool judgment and great confidence in their own judgment, we are all apt to be influenced in our action and conduct by the action and conduct of our fellows. Especially is this the case in speculations. . . . Now, of course, what concerns the purchaser is the value of the property. In itself, the price paid by the vendor is not of any moment, but it is of vital importance to the purchaser in forming his judgment as to value. The law recognizes this fact, and holds a false statement as to price paid actionable. The principle is equally applicable to representations that other persons have purchased similar property, or subscribed for stock on the same terms upon which it is sought to induce any person to become a subscriber." (See, also, *Garrett Co.* v. *Clark*, 42 Misc. Rep. 610 [87 N. Y. Supp. 580]; *Rose* v. *Merchants' Trust Co.*, 96 N. Y. Supp. 956; 29 L. R. A. (N. S.) 477, note; 2 Elliott on Contracts, 105.)

Our conclusion is that the decision and the judgment following therefrom are impregnably grounded, and the judgment is, accordingly, affirmed.

Finch, P. J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 3, 1926.