[Civ. No. 4468. Third Appellate District.—December 31, 1931.]

FORD & McNAMARA, INC. (a Corporation), et al., Appellants, v. FRED S. WILSON et al., Respondents.

Brown & Bissell and Brown, Bissell & Berry for Appellants.

Fogel & Beman and Arthur A. Weber for Respondents.

THOMPSON (R. L.), J.—This is a suit to recover undisclosed profits derived from the sale of real property, which proceeds were retained by the defendants as members of a joint adventure.

Mary Flynn Smurda was the owner of Cedar Hedge Apartments, consisting of lots M, N, O and P, block 25, of the city of Santa Monica, in Los Angeles County, together with the apartment house and furnishings thereof. By agreement on the part of plaintiffs, the defendant Fred S. Wilson took an option in his own name to purchase the property for the sum of $175,000. This option was dated December 3, 1925, and expired February 28, 1926. The several real estate firms, who are party plaintiffs in this action, formed the syndicate for the purpose of reselling the property. This syndicate consisted of six units, which composed. a joint adventure with an agreement to participate equally in the profits of the enterprise. One of these units was represented by the real estate firm of Ford & McNamara, of which the defendant McNamara was an officer and active member. On February 16, 1926, the property was still unsold. The morning of this last-mentioned date, Mr. Bergman, who was a salesman in the real estate firm of George E. Reed, Inc., of Beverly Hills, called at the office of the defendant McNamara and made an offer, in behalf of an undisclosed customer of the firm, to purchase the Smurda Apartments for the sum of $175,000. The offer was rejected. McNamara, however, recognized the bid as an indication of a real prospect for the sale of the property. He immediately prepared and procured each of the members of the joint adventure to sign a written authorization for him to sell the property upon terms which would pay each unit of the syndicate the sum of $1,000, as its share of the profit therefrom. This agreement further provided that McNamara should retain the balance of the profit from the sale in compensa-

tion for his personal services. The document was couched in the following language:

> "Santa Monica, Cal. Feb. 16th, 1926.
>
> "T. J. McNamara, Inc.,
>     "1347 Fourth street,
>         "Santa Monica, Calif.
>
> "Gentlemen:
>
> "We, the undersigned, being interested in a certain option given to Fred Wilson, on property known as Cedar Hedge, at corner of Ocean avenue and Idaho, do hereby agree as follows:
>
> "In view of the fact the syndicating of said property looks doubtful, and the time of expiration of option drawing close, and in further view of the fact that you have a prospect for the sale of said property. And in consideration of the fact that in turning property in said proposed syndicate you did so without commission. We agree to and hereby consent to your selling the said property for an amount which will be sufficient to pay each of us the amount we paid into option fund, plus $1,000 per unit.
>
> "It being understood and agreed that should you be successful in getting for said property a sum greater than that required to pay said amounts, then you are to retain as yours for services said excess, provided said deal is consummated on or before Tuesday, February 23rd, 1926.
>
> " (Signed)

| | |
|---|---|
| "Fred S. Wilson | One unit |
| "Bulling Bros. | One unit |
| "Robert H. Mottet | ½ unit |
| "W. H. Fitchmiller | ½ unit |
| "Fred McNamara, Inc. | 1 unit |
| "H. D. Burton | |
| "By L. M. Ford | 1 unit |
| | 1 unit." |

On the afternoon of this same day, McNamara gave the firm of George E. Reed, Inc., an exclusive listing and authorization to sell the property for the sum of $195,000. On the 17th of February, McNamara signed an agreement to sell the property to George E. Reed, Inc., for $195,000, acknowledging the receipt of $5,000, as part payment therefor. It must be presumed McNamara then knew the property would be sold for a profit of $20,000. Yet none

of the vital facts or prospects of this sale were disclosed to the members of the joint adventure. The signature of at least one of these parties was procured after the exclusive listing was given to Reed. Neither the name of the proposed purchaser nor the selling price was furnished to McNamara's own partner, nor to any other member of the syndicate. They were evidently deceived regarding the prospects of this sale. Except for the fact that they understood McNamara would participate in the usual broker's commission with the firm through which he was dealing, it seems apparent they expected to share equally with him in the balance of the profits of sale. Mr. Ford testified in this regard, "I did ask him who he was selling to, and his answer to me was he was selling through a broker; and I said, 'Mac, you know I have an interest in this, we are in it on the same basis, share and share alike, and whatever is in this that is good for you is good for me.'"

With full knowledge of the terms and conditions of this sale, McNamara, on February 20th, addressed a communication to the members of the joint adventure, through his associate, Wilson, asking them for a further concession allowing the deduction of an additional $1,000, to renew the option for the purchase of the property and the further sum of $450, as costs of the escrow and expense of sale. This communication contained the following paragraph:

"The sale price of the property to my client or purchaser is of an amount sufficient to comply with your letter of the 16th inst., providing the members of the syndicate will deduct therefrom the One Thousand Dollars ($1000) necessary to pay for the extension of the option, and pay for the alley assessment and escrow fees or charges referred to."

Without knowledge of the fact that the property was being sold for $195,000, and construing the last-mentioned document to mean the profit from the sale was insufficient to pay the members of the syndicate the promised sum of $1,000 apiece, unless they made the requested concession therein mentioned, they signed this instrument, ignorant of the fact that the profit of the sale then left approximately the sum of $16,513.95 to be divided between McNamara and Wilson.

The members of the real estate syndicate brought this suit for their share of the undisclosed profit of the sale. The action is based upon an alleged violation of the trust imposed upon the defendants as members of the joint adventure and upon fraud in procuring the signatures of· the plaintiff to the two documents above quoted. Upon trial of the cause, the court adopted findings to the effect that the defendants were not guilty of false representations or omission to disclose material facts with relation to the transaction in procuring the agreements for distribution of the proceeds of the sale of the real property. A judgment was accordingly rendered in favor of the defendants. From this judgment the plaintiffs have . appealed.

The appellants contend the findings of an absence of fraud are not supported by the evidence.

The record in the present case conclusively establishes the fact that the respective parties to this action entered into a contract with each other constituting a joint adventure for the purpose of selling the Smurda property and participating ·in the profits of the sale thereof.

██ The members of a joint adventure sustain a fiduciary relationship toward each other. Each is bound to the highest degree of good faith in his conduct and participation in the enterprise, and may not retain secret profits the receipt of which are undisclosed to his associates. (14 Cal. Jur. 763, secs. 4 and 5; *Munson* v. *Fishburn,* 183 Cal. 206 [190 Pac. 808]; *Menefee* v. *Oxnam,* 42 Cal. App. 81 [183 Pac. 379].) The rights and liabilities of joint adventurers, as between themselves, are governed by the same principles which apply to a partnership. (*Menefee* v. *Oxnam, supra; Irer* v. *Gawn,* 99· Cal. App. 17 [277 Pac. 1053].) ██ In the absence of an agreement to the contrary the members of a joint adventure will participate equally in profits and losses of the enterprise. (14 Cal. Jur. 761, sec. 2; *Butler* v. *Union Ice Co.,* 178 Cal. 195 [172 Pac. 601]; *Irer* v. *Gawn, supra.*) ██ It is true the relationship of joint adventurers may be terminated by mutual consent. (33 C. J. 848, sec. 21; *Irer* v. *Gawn, supra.*) There is, however, no evidence in the present case that the parties to the joint adventure intended, by their execution of the document dated February 16, 1926, above quoted, to terminate their former agreement with respect to the

enterprise of selling the Smurda property. This document clearly indicates that they intended to authorize McNamara, as their agent, to sell the property and retain the profits thereof after paying to each unit of the syndicate the sum of $1,000. This document is a mere agreement with respect to the distribution of the profits of the sale. It does not purport to otherwise change or terminate the former agreement creating the joint adventure.

The record seems to indicate that McNamara failed to disclose to his associates and partner all of the essential facts within his knowledge respecting his prospect for a sale of the property, when he secured their signatures to this document. At least, he used great haste to procure the signatures to this document after the offer to purchase the property was submitted to him by the representatives of George E. Reed, Inc. It may be doubted whether he used the utmost good faith toward them in this transaction. Since there is a conflict of evidence regarding McNamara's knowledge or expectation at the time of the signing of the document, of receiving some $20,000 profit on the sale of the real property, we may assume, in support of the findings of the court, that he was not guilty of a violation of his trust with relation thereto, and that the plaintiffs were bound by their agreement to accept $1,000 per unit as full compensation for their share of the profit of the sale.

The same doubt may not be resolved in favor of the defendants with respect to the procuring of the signatures of their associates to the document of February 20th, by the terms of which they made a further concession authorizing the withholding of some $1450, from their agreed shares of the profits of sale. On February 17th, McNamara gave George E. Reed, Inc., a written agreement to sell the property for $195,000, and receipted for the sum of $5,000 as part payment thereof. He then knew or anticipated he would receive a profit of approximately $20,000, on the sale of the property. He informed his associates nothing of these facts. Even if he was not then assured of a sale at $195,000, in the exercise of good faith, they were entitled to know the terms of his contract and the fact that he expected to secure a sale at that price. Upon the contrary, they were deceived by the very terms of the document when he said: ''The sale price of the

property . . . is of an amount sufficient to comply with your letter of the 16th inst. (agreeing to accept $1,000 per unit in full compensation for their share of the profit of sale) providing the members of the syndicate will deduct therefrom the One Thousand Dollars ($1,000) necessary to pay for the extension of the option, and pay for the alley assessment and the escrow fees.'' The construction of this paragraph clearly infers that unless the plaintiffs made the concessions mentioned, the profit of the sale would be insufficient to pay their agreed proportion of $1,000 per unit. This was not true. This last-mentioned document was therefore procured to be signed by the plaintiffs under false representations. The defendants were not only guilty of omitting to inform their associates of the essential facts of the transaction, but the last-mentioned document contains an affirmative misrepresentation of facts which must have been an inducement for them to sign the document. For this reason the last-mentioned document is invalid. It follows that the findings of the court to the effect that the defendants were not guilty of a breach of their trust in failing to disclose the essential facts regarding the transaction, to their associates, and that they were not guilty of misrepresentations regarding the sale of real property, are not supported by the evidence.

The judgment is reversed and the cause remanded for a new trial.

Preston, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 30, 1932.