Filed 3/29/22  Wang v. Lone Oak Fund CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ZHENGJUN WANG et al., | B308656 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 19PSCV00290) |
| v. | |
| LONE OAK FUND LLC et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Peter A. Hernandez, Judge.  Reversed and remanded with directions.

MagStone Law and Dezhan Li for Plaintiffs and Appellants Zengpeng Feng, Jixiang Feng and Yongxiang Feng.

Garrett & Tully, Robert Garrett, Candie Y. Chang, Zi C. Lin, and Sonia Plesset Edwards for Defendant and Respondent Lone Oak Fund LLC.

Fidelity National Law Group and Kevin R. Broersma for Defendant and Respondent Qualfax, Inc.

_____

**INTRODUCTION**

Appellants Zhengjun Wang and Baohua Wang (father and son)[1] sued respondents Lone Oak Fund, LLC (Lone Oak) and Qualfax, Inc. (Qualfax) (among others), seeking to quiet title to a piece of real property owned by Baohua or, failing that, to establish an equitable lien against the property. Appellants alleged that without their knowledge or consent, the property was encumbered with deeds of trust in favor of both Lone Oak and Qualfax, securing loans made by respondents to entities unaffiliated with appellants. In

_____

[1] Because appellants share a surname, we refer to them by their first names.

2

2019, Qualfax purchased the property at a nonjudicial foreclosure sale that it initiated.

In the proceedings below, both respondents filed motions for judgment on the pleadings, arguing the operative complaint failed to state causes of action against them because they were good faith encumbrancers. The court granted both motions without leave to amend, and subsequently entered a judgment in respondents' favor. On appeal, appellants contend both that the court erred in granting the motions, and that regardless, we should remand because they can amend their operative complaint to state a cause of action.

We conclude that while appellants have failed to demonstrate the trial court erred in granting respondents' motions, they have demonstrated a reasonable possibility that they can amend the operative complaint to state a cause of action. We thus reverse the judgment, and remand the matter to permit them to do so.

## STATEMENT OF RELEVANT FACTS

### A. *The First Amended Complaint*

In June 2019, appellants filed a first amended complaint (FAC).[2] It alleged that defendant Fai Wong aided appellants, who are Chinese nationals, with their purchase of real properties in the United States, including a property

---

[2] The original complaint, filed in March 2019, is not in the record.

3

on Northview Terrace in Hacienda Heights (the Property), which was purchased on behalf of Zhengjun, but titled in the name of his son, Baohua. As with other properties Wong acquired for appellants, Wong purchased the Property through Golden Ocean Investment (a company controlled by Wong and his wife) using money provided by appellants; Golden Ocean then sold the Property to Baohua for more than it paid. Specifically, paragraph 39 of the FAC alleged that the Property "was acquired by Golden Ocean on or about June 28, 2012 and transferred to Baohua shortly thereafter on or about August 17, 2012."

In January 2015, without appellants' knowledge or consent, the Property was transferred to a company called Global Panda, which permitted respondent Lone Oak to record a "mortgage" against it (the First Lone Oak DOT). In November 2017, without appellants' knowledge or consent, a company called Global Travel & Cultural Entertainment entered into a loan agreement with respondent Qualfax, and the loan was secured by a deed of trust recorded against the Property (the Qualfax DOT). Eight days later, the Property was transferred to Global Travel, again without appellants' knowledge or consent. In January 2019, Qualfax conducted a nonjudicial foreclosure and took possession of the Property.

Based on these allegations, appellants sought to quiet title to the Property in their favor. In the alternative, appellants asked the court to impose an equitable lien against the Property, and deem the lien superior to any

4

other liens established against the Property after appellants provided the money to purchase it.

### B. *Qualfax's Initial Motion for Judgment on the Pleadings*

In October 2019, Qualfax moved for judgment on the pleadings, arguing that the allegations in the FAC, as well as documents that Qualfax asked the court to judicially notice, established that Qualfax was a good faith encumbrancer, and thus appellants could not state causes of action for quiet title or equitable lien against Qualfax. Specifically, Qualfax argued that in October 2017, Baohua executed a power of attorney (the 2017 POA) naming non-party Qun Yang his attorney-in-fact, and granting Yang the power to transfer title to the Property.[3] Yang subsequently transferred title to Global Travel, and Global Travel encumbered it with the Qualfax DOT to secure a loan it obtained from Qualfax. Because the 2017 POA granted Yang the power to transfer title to the Property, Qualfax did not need authorization from appellants to issue the loan or secure it with the Qualfax DOT. Qualfax served the motion electronically on appellants' counsel.

In December 2019, appellants opposed Qualfax's motion, arguing the 2017 POA was forged. In a declaration

---

[3] The 2017 POA also gave Yang power over two other pieces of real property, including one located in the city of Whittier known as the "Santa Cruz Property."

5

submitted with the opposition, Baohua asserted that on October 31, 2017, the day when he purportedly signed the 2017 POA in Clark County, Nevada, he was in China. Appellants contended that because the 2017 POA was forged, any transfers made by Yang were void, and passed no title to the transferee. Qualfax replied to appellants' opposition, arguing that it referred to evidence not present in the FAC.

### C. *Substitution of Counsel*

In March 2020, prior to the hearing on Qualfax's motion, appellants' counsel moved to be relieved. Counsel declared that he had mailed the motion to appellants "c/o Michael E. Smith, Esq." (attorney Smith) at Smith's address in Las Vegas. On April 8, 2020, both appellants filed substitution of counsel forms, electing to represent themselves. The address they provided for themselves was "Law Office of Michael E. Smith, Esq." at Smith's Las Vegas address. Appellants' former counsel electronically served these documents on respondents' counsel.

### D. *Lone Oak's Initial Motion for Judgment on the Pleadings*

On April 20, 2020, Lone Oak filed its own motion for judgment on the pleadings and request for judicial notice, arguing that on December 21, 2016, Baohua had signed a power of attorney (the 2016 POA) authorizing defendant

Wong to encumber the Property, and therefore Lone Oak had no notice that Wong's action in encumbering the Property in 2017 with a deed of trust (the Second Lone Oak DOT) was unauthorized.[4]  Lone Oak served the motion on appellants' former attorney.

On April 22, 2020, the court set both motions for hearing on July 28, 2020, at 1:30 p.m., and stated "Any briefs not yet filed will be due in accordance with the new hearing date(s)."

### E.    *Refiled Motions*

On June 11, 2020, Qualfax refiled its motion for judgment on the pleadings.  With the exception of the dates, the refiled motion was identical to the initial motion, and was served on attorney Smith via overnight delivery.[5]

On June 22, 2020, Lone Oak refiled its motion for judgment on the pleadings.  Like Qualfax's motion, Lone Oak's refiled motion was identical to its initial motion.  Lone Oak's refiled motion was served electronically on attorney Smith.

On July 21, 2020, Lone Oak filed a notice of non-opposition, which was served electronically on attorney Smith.  That same day, Qualfax served a notice that its

---

[4]    The 2016 POA also gave Wong power to encumber the Santa Cruz Property.

[5]    The notice of motion erroneously gave the hearing time as 8:30 a.m., rather than 1:30 p.m.

7

motion had been rescheduled from 8:30 a.m. to 1:30 p.m. This notice was served via overnight mail and electronic service on attorney Smith. The next day, Qualfax also filed a notice of non-opposition, which was served via overnight mail and electronic service on attorney Smith.

### F. *Judgment and Appeal*

On July 28, 2020, the court heard both respondents' motions for judgment on the pleadings. After noting that neither appellant had appeared, the court granted both motions, ordered respondents to provide the court with proposed judgments, and set an order to show cause why the case should not be dismissed. Qualfax electronically served a notice of this order on attorney Smith. On August 24, 2020, the court entered judgment in favor of Lone Oak and Qualfax. Notice of Entry of Judgment was served electronically on attorney Smith.

On October 23, 2020, through new counsel, appellants appealed the judgment. They also responded to the court's order to show cause, attesting that they had failed to oppose Lone Oak's and Qualfax's motions because they had not received actual notice of the motions, and because they believed attorney Smith, who was their attorney in a related case, would take care of their disputes. The response also asserted that both the 2016 POA and 2017 POA were forged.

### G. *Motion for Relief from Judgment and Proposed Second Amended Complaint*

On January 27, 2021, appellants filed a motion for relief from judgment, attaching a proposed second amended complaint (proposed SAC).[6] The motion admitted that attorney Smith "received five dispositive motions in this case" and a related case, but asserted he was "overwhelmed" due to serious health issues. The motion also contended that the orders granting respondents' motions and subsequent judgment in their favor were caused by attorney Smith's neglect. Appellants additionally claimed that Lone Oak's motion was served only electronically, and attorney Smith had never agreed to accept electronic service. The proposed SAC contained the same causes of action as the FAC, but included more detail regarding the transactions with respondents, including an allegation that both the 2016 POA and 2017 POA were forged, rendering void any subsequent transfers of the Property. The proposed SAC also alleged that the August 2012 grant deed transferring title of the Property from Golden Ocean to Baohua contained the untrue notation that "'The Grantors and the Grantees in this conveyance are comprised of the same parties who continue to hold [t]he same proportionate interest in the property,

---

[6] While the record is silent as to how the court ruled on this motion, Lone Oak claims in its brief that the court denied it for lack of jurisdiction, because appellants filed it after filing their notice of appeal.

R&T 11925(d)'" in an effort "to avoid documentary transfer tax."[7]

## DISCUSSION

### A. *Appellants Have Failed to Demonstrate the Court Erred in Granting the Motions for Judgment on the Pleadings*

Appellants contend: (1) the court erred in considering the motions because respondents served them with inadequate notice; (2) as a matter of law, courts may not determine on a motion for judgment on the pleadings whether a defendant is a good faith encumbrancer; and (3) on the record before the court, it erroneously concluded respondents were good faith encumbrancers and thus should not have granted the motions. We address and reject each contention below.

---

[7] In July 2021, appellants asked us to judicially notice their proposed SAC. They failed to attach the proposed pleading, instead informing us that it was included in the Clerk's Transcript. We denied the request. In October 2021, appellants renewed their request, this time attaching the document. We deny their request again because, as appellants acknowledge, the proposed SAC is already part of the record on appeal.

### 1. The Court Did Not Err in Hearing the Motions

#### (a) Lone Oak

Appellants argue that because Lone Oak served its motion electronically without a prior agreement for electronic service, the court lacked jurisdiction to rule on Lone Oak's motion. Lone Oak does not deny that appellants did not consent to electronic service, or that this was the method by which the motion was served, but instead argues that appellants have failed to demonstrate prejudice from this procedural defect. (*Reedy v. Bussell* (2007) 148 Cal.App.4th 1272, 1289 [to obtain reversal due to inadequate notice, "appellant must demonstrate not only that the notice was defective, but that he or she was *prejudiced*"].) Appellants admitted in their motion for relief from judgment that attorney Smith received Lone Oak's motion; they argued that the granting of the motion was due to his neglect, not because he failed to receive it. Thus, though Lone Oak's method of service was unauthorized, appellants have failed to demonstrate any resulting prejudice, and therefore no reversal is warranted due to inadequate service.

#### (b) Qualfax

Appellants argue both that Qualfax did not serve its motion on appellants, and that it belatedly served a notice advising appellants of the rescheduled time of the hearing. However, Qualfax's proof of service demonstrates its motion was sent via overnight delivery to appellants at the address

11

specified in their substitutions of attorney and, as with the Lone Oak motion, they admit attorney Smith received it. As to the notice of the new hearing time, while Qualfax failed to serve the notice until July 21, even assuming this constituted defective notice, appellants again have failed to demonstrate prejudice. The original motion informed appellants that it would be heard at 8:30 a.m. on July 28. The notice of the rescheduled hearing stated the motion would be heard five hours later, at 1:30 p.m. Nothing in the record suggests appellants appeared at 8:30 a.m., or that they would have appeared at the 1:30 p.m. hearing had they known of it several weeks earlier. Therefore, no reversal is warranted due to insufficient notice.

### 2. A Court May Determine Good Faith Encumbrancer Status on a Motion for Judgment on the Pleadings

Appellants argue that the court was not permitted to determine on a motion for judgment on the pleadings whether respondents were good faith encumbrancers, because that issue was a question of fact. But courts may decide questions of fact on a motion for judgment on the pleadings so long as the undisputed facts permit only one reasonable interpretation. (See *Czajkowski v. Haskell & White, LLP* (2012) 208 Cal.App.4th 166, 175 [though question of plaintiff's reasonableness in relying on negligent misrepresentation is question of fact, "if the undisputed facts

12

do not leave any room for reasonable differences of opinion," issue "should be decided as a matter of law"]; *Unruh-Haxton v. Regents of University of California* (2008) 162 Cal.App.4th 343, 368 [""Ordinarily, the determination whether an employee has acted within the scope of employment presents a question of fact; it becomes a question of law, however, when 'the facts are undisputed and no conflicting inferences are possible'""].)  Here, the court presumably found that the facts stated in the FAC and the judicially noticed documents could lead only to the reasonable conclusion that respondents were good faith encumbrancers.  As explained below, appellants have failed to demonstrate the court erred in doing so.

### 3.  Appellants Have Failed to Demonstrate the Court Erred in Granting the Motions for Judgment on the Pleadings

### (a)  Good Faith Encumbrancer

Both respondents argued that appellants failed to state a cause of action against them because they were good faith encumbrancers when they made their loans and recorded the deeds of trust.  "'A purchaser (including an encumbrancer) in good faith for value and without actual or constructive notice is entitled to protection against undisclosed liens and equities existing against . . . unrecorded instruments.'" (*Caito v. United California Bank* (1978) 20 Cal.3d 694, 702.) Lone Oak argued that it was a good faith encumbrancer

13

because the 2016 POA authorized defendant Wong to encumber the Property with the Second Lone Oak DOT, and Lone Oak had no notice that Wong's actions were unauthorized. On appeal, appellants argue the court erred in finding Lone Oak was a good faith encumbrancer because the 2016 POA had "a serious problem on its face: it cover[ed] the Santa Cruz Property . . . which was not owned by Baohua Wang." We are unpersuaded.

The 2016 POA, which implied that Baohua had an interest in the Santa Cruz Property, was signed on December 21, 2016. The Second Lone Oak DOT, which stated that Global Travel owned the Santa Cruz Property, was signed on December 27, 2016. Given that the Second Lone Oak DOT was not signed until six days after the 2016 POA, we find this insufficient to constitute constructive notice that the 2016 POA could not be relied on.

Qualfax similarly argued that appellants failed to state a cause of action against it because the 2017 POA gave Yang the power to transfer the Property. Appellants similarly argue that Qualfax could not rely on the 2017 POA, as it also "cover[ed] the Santa Cruz Property," and Qualfax must have known that Baohua did not own the Santa Cruz Property because the Qualfax DOT encumbered it. Appellants additionally allege that the grant deed transferring title of the Property from Baohua to Global Travel was "suspicious" because it had a notation that the transfer was a "bonafide gift and the grantor received nothing in return." But, like the situation with Lone Oak, the 2017 POA was signed on

14

October 31, 2017, and the Qualfax DOT was not signed until November 7, 2017.  Moreover, given a previous attempt at avoiding transfer taxes, the notation that the transfer from Baohua to Global Travel was a "bonafide gift," was insufficient to raise suspicions of fraud.[8]  Thus, we find no error in the court's conclusion that Qualfax lacked notice that the 2017 POA was fraudulent.[9]

### (b)   Quiet Title

To quiet title to real property, a plaintiff must state the basis on which title should be quieted.  (Code Civ. Proc., § 61.020, subd. (b) [quiet title complaint shall be verified and shall include "[t]he title of the plaintiff as to which a determination under this chapter is sought and the basis of the title"].)  Appellants contend that they stated this basis in

---

[8]     In their proposed SAC, appellants allege that the 2012 Grant Deed conveying the Property to Baohua contained the untrue notation that "'The Grantors and the Grantees in this conveyance are comprised of the same parties who continue to hold [t]he same proportionate interest in the property, R&T 11925(d)'" in an effort "to avoid documentary transfer tax."

[9]     In their reply brief, appellants contend that to the extent the court took judicial notice of the truth of the facts stated in the recorded documents to determine respondents were good faith encumbrancers, it erred.  This argument is forfeited for failure to raise it in the opening brief.  (*L.A. Taxi Cooperative, Inc. v. The Independent Taxi Owners Assn. of Los Angeles* (2015) 239 Cal.App.4th 918, 926, fn. 7 ["As this argument was first raised in the reply brief, it is forfeited"].)

15

paragraph 39 of the FAC. That paragraph alleged that the Property "was acquired by Golden Ocean on or about June 28, 2012 and transferred to Baohua shortly thereafter on or about August 17, 2012." But if respondents were good faith encumbrancers subsequent to the 2012 transfer of the Property to Baohua, then appellants have failed to state a basis upon which title should be quieted against them. (See, e.g., *Reiner v. Danial* (1989) 211 Cal.App.3d 682, 689-690 ["A purchaser or encumbrancer who pays valuable consideration for his interest in real property in good faith and who records his interest, receives his interest free and clear of all prior unrecorded claims in the property which are unknown to him"].) As discussed above, because appellants failed to demonstrate the court erred in determining respondents were good faith encumbrancers, they also have failed to demonstrate the court erred in granting the motions for judgment on the pleadings.[10]

---

[10] The FAC also alleged causes of action against respondents for "Equitable Lien" and "Preliminary and Permanent Injunction." Appellants do not argue on appeal that they adequately stated a cause of action for equitable lien. And "[a]n injunction is a remedy, not a cause of action. Therefore, it may not be issued if the underlying causes of action are not established." (*Venice Coalition to Preserve Unique Community Character v. City of Los Angeles* (2019) 31 Cal.App.5th 42, 54.) Appellants do argue that they stated a cause of action for declaratory relief, but the FAC contains no such cause of action.

16

**B.** ***Appellants Have Demonstrated a Reasonable Possibility That They Can Amend Their Operative Complaint to State a Claim***

**1. Appellants Have Not Forfeited This Issue**

Appellants did not request leave to amend their FAC, either in the only written opposition they submitted (in response to Qualfax's initial motion for judgment on the pleadings), or at the hearing on the motions (at which they did not appear). Qualfax argues we should not remand to permit appellants to amend because they failed to meet their burden to demonstrate how they could amend successfully. While appellants failed to request leave to amend in the proceedings below, we conclude the matter must be remanded, as appellants are permitted to make, and have made, the requisite showing on appeal.[11]

""In the case of either a demurrer or a motion for judgment on the pleadings, leave to amend should be granted if there is any reasonable possibility that the plaintiff can state a good cause of action."' [Citation.] The plaintiff has the burden of showing what amendment can be made, and how it will change the legal effect of the pleading,

---

[11] Moreover, appellants made at least a partial showing below. As noted, in opposing Qualfax's initial motion which argued that the transfer from Baohua to Global Travel was permitted by the 2017 POA, appellants contended that the POA was forged, voiding any transfers under its authority.

17

so that it states a cause of action. [Citation.] A plaintiff can even make this showing for the first time on appeal." (*Ventura Coastal, LLC v. Occupational Safety & Health Appeals Bd.* (2020) 58 Cal.App.5th 1, 32-33; see also Code Civ. Proc., § 472c, subd. (a) ["When any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made"]; *Palm Springs Tennis Club v. Rangel* (1999) 73 Cal.App.4th 1, 7 ["plaintiff need not request leave to amend in order to preserve on appeal the issue of whether the court abused its discretion in sustaining a demurrer without leave to amend (Code Civ. Proc., § 472c)"]; *MacIsaac v. Pozzo* (1945) 26 Cal.2d 809, 816 ["section 472c of the Code of Civil Procedure . . . provides that the question whether the trial court abused its discretion in sustaining a demurrer without leave to amend 'is open on appeal even though no request to amend such pleading was made.' [Citation.] Since the reason for the rule is the same on a motion for judgment on the pleadings, the same result should obtain"].) As discussed below, we conclude appellants have made the requisite showing on appeal.

### 2. Quiet Title

Appellants contend that if permitted to amend their operative complaint, they would allege that both the 2016 POA and 2017 POA were forged and thus void *ab initio*,

rendering the Second Lone Oak DOT and the Qualfax DOT void as well. (See, e.g., *Estate of Stephens* (2002) 28 Cal.4th 665, 672 [when attorney-in-fact acts without authority under invalid power of attorney, attempted action is void, and any conveyance under such circumstances is void]; *Trout v. Taylor* (1934) 220 Cal. 652, 656 ["Numerous authorities have established the rule that an instrument wholly void, such as an undelivered deed, a forged instrument, or a deed in blank, cannot be made the foundation of a good title, even under the equitable doctrine of *bona fide* purchase"].)

Lone Oak argues that these new allegations are inconsistent with the allegations made in the FAC, and that appellants have failed to explain why they were omitted from the FAC. It is true, as Lone Oak asserts, that the FAC "never alluded to any forged power of attorney." However, it contained broad allegations that recorded deeds of trust and related loan transactions occurred "without the authorization or knowledge of any of the Plaintiffs." Appellants' proposed allegations regarding forged powers of attorney (which appellants claim to have learned of after the filing of the FAC) are not inconsistent with these allegations, but rather elucidate them, providing an explanation why the transactions were unauthorized, and how they could have occurred without appellants' knowledge. We discern no inconsistency.

Lone Oak additionally argues that even if appellants were permitted to allege the 2016 POA was forged, under Probate Code section 4303, Lone Oak cannot be found liable

19

for relying on it. Such an argument is inappropriate at this stage, because it relies on facts that are neither in any iteration of the complaint, nor judicially noticeable.

Probate Code section 4303 provides that a third party may rely on a Power of Attorney without liability under three conditions: "(1) The power of attorney is presented to the third person by the attorney-in-fact designated in the power of attorney. [¶] (2) The power of attorney appears on its face to be valid. [¶ and] (3) The power of attorney includes a notary public's certificate of acknowledgment or is signed by two witnesses." (Prob. Code, § 4303, subd. (a).) Here, nothing in either the pleadings or the judicially noticed documents demonstrated that the 2016 POA was presented to Lone Oak by the person named therein (defendant Wong). Lone Oak contends we can deduce this requirement was met because the proposed SAC alleges that the 2016 POA and the Second Lone Oak DOT were "recorded together." But an allegation that the two documents were recorded together has no bearing on whether Wong was the one who presented the POA to Lone Oak. Therefore, regardless of whether Probate Code section 4303 might ultimately insulate Lone Oak from being named in causes of action for quiet title or equitable lien -- a question on which we express no opinion -- it is not an issue that can be properly addressed at the pleading stage in this case.

20

### 3. Equitable Lien

"In general, equity will create a lien on property where this is necessary to accomplish substantial justice and protect creditors. Thus, courts will construe the existence of equitable liens where the parties have erroneously created a defective mortgage . . . or, even in the absence of any agreement, where it is necessary to prevent unjust enrichment . . . ." (*Grappo v. Coventry Financial Corp.* (1991) 235 Cal.App.3d 496, 509.)

Appellants contend that if they can prove respondents were not good faith encumbrancers, "they may also prove their third cause of action [for] Equitable Lien, at least against Qualfax, who is in possession of the . . . Property." Qualfax does not dispute this in its brief. Lone Oak, however, argues that no claim for equitable lien can be stated against it, because it is not in possession of the Property. Lone Oak too narrowly characterizes the scope of appellants' equitable lien cause of action.

The proposed SAC requests that if the court does not quiet title to the Property in their favor, it find an equitable lien exists, and deem the lien "prior to all interests acquired or allegedly acquired after the purchase money [for the Property] was provided." In other words, appellants request that if title to the Property is not restored to them, the court not only grant them an equitable lien on the Property, but also declare the lien superior to Lone Oak's. Lone Oak is therefore a proper defendant to this cause of action.

### 4.    Injunction

Appellants also intend to allege a cause of action for an injunction.  But "[a]n injunction is a remedy, not a cause of action."  (*Venice Coalition to Preserve Unique Community Character v. City of Los Angeles , supra,* 31 Cal.App.5th at 54.)  Nevertheless, despite the inapt pleading, we are aware of nothing that would prevent appellants from requesting the remedy of an injunction if tethered to a suitable cause of action.

## DISPOSITION

The judgment in favor of respondents is reversed.  On remand, appellants are granted leave to file an amended complaint.  Respondents may challenge any such amended complaint in any manner permitted by law.  In the interests of justice, the parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

WILLHITE, J.

COLLINS, J.

23